①

UNITED STATES DISTRICT COURT
WESTERN  DISTRICT OF TEXAS
~~SAN ANTONIO~~ DIVISION
*DEL RIO*

F I L E D

AUG 24 1970

D~~A~~N W. BENEDICT, Clerk

By *Frances Marks*
          Deputy

GENOVEVA MORALES, a/n/f for
DANIEL MORALES, a minor, et al

      Plaintiffs

VS.

E. P. SHANNON, individually and
as Principal of Robb Elementary
School, Uvalde County, Texas; R.
E. BYROM, individually and as
Superintendent of Uvalde Indepen-
dent School District, Uvalde County,
Texas, and the members of the Board
of Trustees of the Uvalde Independent
School District, individually and in
the respective official capacity of
each, to-wit: DR. DEAN P. DIMMIT,
C. A. DISHMAN, JAKE LANNING, TAYLOR
NICHOLS, BUELL STEWART, GARVIS
MARSH, FRANK MILLER, JR., R. W.
SHEPPERD (ex-Board Member); and
GORDON L. ERKFITZ, individually

      Defendants

CIVIL ACTION NO. *DR-70-CA-14*

~~SA - 0 - CA - 319~~

## C O M P L A I N T

1.  This action is brought pursuant to the Civil Rights
Act of 1871, United States Code Title 42, Section 1983.  This
Court has original jurisdiction of the action under the provi-
sions of the United States Code Title 28, Section 1343(3) and
1343(4), and under United States Code Title 28, Section 1331,
based upon the violation of rights secured by and arising under
the Constitution and the laws of the United States.  Relief is
also sought pursuant to the Federal Declaratory Judgment Act,
United States Code Title 28, Sections 2201 and 2202.  The amount
in controversy exceeds the sum or value of Ten Thousand Dollars
($10,000.00), exclusive of interest and cost.

2.  Daniel Morales, a minor, Plaintiff, is represented
herein by his natural parent and mother, Genoveva Morales, as
next friend, and both are residents of Uvalde, Uvalde County,

Texas.  Daniel Morales, together with his brothers and sisters,
Sulema Morales, Cynthia Morales, Robert Morales, Lucy Morales,
Eddie Morales, Sonia Morales, Annette Morales and Yvonne Morales,
were formerly enrolled as students in the Uvalde Independent
School District, and are all children of the aforesaid mother,
Genoveva Morales.

    3.  R. E. Byrom, Defendant, is the Superintendent of the
schools of the Uvalde Independent School District, Uvalde County,
Texas; he is being sued herein, both individually and in his
aforementioned official capacity.  He is upon information and be-
lief a resident and citizen of Uvalde County, Texas, and resides
at 311 N. Getty, Uvalde, Texas.  E. P. Shannon, Defendant, is
Principal of Robb Elementary School in the Uvalde Independent
School District, Uvalde County, Texas; he is being sued herein,
both individually and in his aforementioned official capacity.
He is upon information and belief a resident and citizen of Uvalde
County, Texas, and resides at 732 Skylane Drive South, Uvalde,
Texas.  C. A. Dishman, Defendant, is President of the Board of
Trustees of Uvalde Independent School District, Uvalde County,
Texas; he is being sued herein, both individually and in his afore-
mentioned official capacity.  He is upon information and belief a
resident and citizen of Uvalde County, Texas, and resides at 320
Minter, Uvalde, Texas.  Jake Lanning, who resides at 204 N. Getty,
Taylor Nichols, who resides at 200 E. Nopal, Buell Stewart, who
resides at 928 E. Nopal, Garvis Marsh, who resides on the Old
Sabinal Road, and Frank Miller, Jr., who resides at 417 Minter,
Defendants, are members of the Board of Trustees of the Uvalde
Independent School District, and upon information and belief are
each residents and citizens of Uvalde, Uvalde County, Texas, and
are being sued herein both individually and in their aforementioned
official capacity.  R. W. Shepperd, who resides at 805 E. Nopal,
is an ex-member of the Board of Trustees of the Uvalde Independ-
ent School District, Uvalde County; he is being sued herein, both

individually and in his aforementioned official capacity.  He
is upon information and belief a resident and citizen of Uvalde
County, Texas.  Gordon L. Erkfitz, Defendant, who resides on
Garner Field Road, is being sued herein individually.  He is upon
information and belief a resident and citizen of Uvalde County,
Texas.

     4.  Plaintiff, Genoveva Morales, brings this action on
her own behalf and on behalf of all other persons similarly situ-
ated, pursuant to Rule 23(a)(3) of the Federal Rules of Civil
Procedure, because of the common questions of law and fact,
affecting the civil rights of all school children in the Uvalde
Independent School District who are similarly situated, to be
free of arbitrary, malicious and capricious practices which violate
and are intended to violate their rights, privileges and immunities
as guaranteed by the First, Ninth and Fourteenth Amendments to the
Constitution of the United States of America, as well as the laws
of the United States of America, as previously enumerated.  The
members of the class are so numerous as to make it impracticable
to bring them before this Court.  A common relief is sought; the
interests of this class hereinabove described are adequately
represented by this Plaintiff.

     5.  Plaintiff, with approximately 550 fellow school
children, all of whom are enrolled in the Uvalde Independent School
District, all Mexican-American students, tried to meet with the
School Board at various times and discussed the racially dis-
criminatory attitudes exercised by the Defendants herein for the
Mexican American school children in the Uvalde Independent School
District; thereafter, on February 23, 1970, several school children
presented to the Defendant, E. P. Shannon, principal of Robb
Elementary School and the School Board, the first among many
thereafter, list of grievances.  Then, on or about the morning of
April 4, 1970, approximately 525 school children in the Uvalde In-
dependent School District, in protest of the Defendants' refusal
to remedy the aforementioned grievances, refused to attend classes

at the Uvalde Independent School District in a peaceful protest of racially discriminatory practices, including the unwarranted dismissal of Josue Garza, a teacher at the Uvalde Independent School District.

6. On February 23, 1970, a request for a special hearing was filed with the Defendants relating a number of grievances with reference to the School Board operation. Such request is attached hereto and marked Exhibit No. 1, and made a part hereof for all purposes.

Thereafter, teacher Josue Garza received a letter from E. P. Shannon, Principal, that his contract would not be renewed. Such letter was dated March 4, 1970, a copy of which is attached hereto and marked Exhibit No. 2, and made a part hereof for all purposes.

On March 10, 1970, the Defendants notified the Plaintiffs herein that "there does not appear to be sufficient justification for calling a special board meeting in order to discuss these complaints." A copy of such correspondence is attached hereto and marked Exhibit No. 3, and made a part hereof for all purposes.

By letter of April 8, 1970, Josue Garza requested to be on the School Board agenda for the April 13th meeting with his attorney, a copy of such letter being attached hereto and marked Exhibit No. 4, and made a part hereof for all purposes. Mr. Josue Garza, the teacher who was dismissed, is among the many grievances filed by the Plaintiffs herein, and is illustrative of the constitutional deprivations to which they were subjected in their peaceful efforts to obtain the constitutional due process to which they were entitled herein.

On April 13, 1970, one of the Defendants, Frank Miller, apparently had been ill and had not been sworn in. Another member, Defendant Taylor Nichols, was out of town. The Board President informed the Plaintiffs that the Board could not act until a full Board was present, and as a consequence a hearing was postponed

until April 16, 1970.  In spite of the complaint by the Plaintiffs
that a quorum was present and therefore the Board could act, the
President said the Board could not reorganize and could not act
without every Board Member being present.  Such action was obvious-
ly arbitrary and discriminatory and violative of the Plaintiffs'
right.

Mr. Gilbert Torres, and others representing the Plain-
tiffs, parents of the Plaintiffs herein, told the Board if they
did not meet, then the students would be compelled to leave the
school - which they did on April 14, 1970.

On April 17, 1970, several demands and requests were
again presented by the Plaintiffs, as evidenced by Exhibit No. 5
attached hereto and made a part hereof for all purposes.

After the aforesaid walkout, several of the Plaintiffs
were reclassified by the local Draft Board and inducted into the
Military Service.

On August 10, 1970, another petition was presented to
the Defendants herein by the Plaintiffs, as evidenced by Exhibit
No. 6 attached hereto and made a part hereof for all purposes.

The only response to such petition was ridicule and
the haughtiest rebuke as evidenced by Exhibit No. 7 attached here-
to and made a part hereof for all purposes.

All of the aforesaid is illustrative of the many viola-
tions by the Defendants of Title VI of the Civil Rights Act of
1964, and the Departmental Regulation (45 CFR Part 80) promulgated
thereunder, requiring that there be no discrimination on the basis
of race, color or national origin in the operation of any federally
assisted programs.

7.  Notwithstanding the Plaintiffs many times requested
hearings, open and free, honest and searching, they were refused
such discussions with the peremptory attitude that such
grievances did not exist and that discussion would follow only
after the Plaintiffs re-entered school.

8. Among the grievances which do exist in violation of the Civil Rights Act of 1964, Departmental Regulation (45 CFR Part 80), and have for many years prior to Plaintiffs' aforesaid peaceful protest and boycott, are the following:

1. Discrimination on the basis of race, color and national origin.

2. Denying equality of educational opportunity to Spanish-surnamed pupils.

3. District has refused to take affirmative steps to rectify the language deficiency of Plaintiffs in order to open its instructional program to them.

4. Assignment of Mexican-American students to classes for mentally retarded and/or inferiors on basis of criteria which essentially measure or evaluate English language skills.

5. Ability grouping or tracking system operates as a dead-end or permanent track rather than simply dealing with special language skill needs of Mexican-American group.

6. Notices of school activities are not adequately transmitted to Plaintiffs or parents by providing such notices in Spanish, as well as English.

7. Uvalde Independent School District categorically refuses to admit "problems currently exist" so there has never been any attempt to work with the guidelines of Office for Civil Rights.

9. The refusal of the Defendants to listen to Plaintiffs or correct any of the grievances of the fellow students and insistence they attend classes under such premises in the Uvalde Independent School District contravenes the First and Fourteenth Amendments in that it was designed to penalize Plaintiff and his fellow students for exercising First Amendment rights secured to Plaintiff and his fellow students.

10. The Defendants' refusal to address themselves to any of the aforesaid current problems in the Uvalde Independent

School District during the 1969-70 school year contravenes the
due process clause to the Fourteenth Amendment in that such action
was undertaken without a prior hearing conforming to the require-
ments of procedural due process, including adequate advance no-
tice, in writing, of the intention to ignore such grievances and
charges or reasons underlying such discrimination; the right to
make a written response to the reply; a fair hearing in which
the Board has the burden of proof in establishing a defense; the
right to produce witnesses and evidence on behalf of the Plain-
tiff and his fellow students; the right, at the hearing, to cross-
examine the witnesses against the Plaintiff's charges and his
fellow students; the right to be confronted with the witnesses
against the Plaintiff's charges and his fellow students; findings
of fact justifying the decision reached; and a full considera-
tion, fair determination, and findings made in accordance with
the evidence of testimony adduced; the right to counsel of the
students' choice; an impartial tribunal..consisting of a panel
or an individual..to hold the hearing and to make findings of
fact and a recommendation for action to the Board; the right to
be given a complete transcript of the proceedings; the right to
present oral argument; the right to a review of the decision, if
adverse, by an appropriate body, and the right to be advised of
each of the foregoing rights.

11.  By reason of the foregoing, Plaintiff and his fellow
students have suffered continuous mental and emotional anguish,
embarrassment, humiliation and have sustained special and general
damages.

12.  Plaintiffs were forced to employ attorneys herein
and compelled to bring the action because of Defendants' unreason-
able and obdurate obstinacy.

Plaintiffs have no other adequate remedy at law.

WHEREFORE, Plaintiffs pray for:

a.   A Declaratory Judgment declaring the acts of the Defendants in refusing to listen to and/or correct any of the aforesaid complaints of the Plaintiff and his fellow students in Uvalde Independent School District, to be in violation of the Constitution and the laws of the United States, as hereinabove set forth;

b.   A Temporary Restraining Order pending a hearing on a preliminary injunction enjoining the Defendants herein from:

1.   Discriminatory practices heretofore outlined;

2.   Penalizing or taking any other disciplinary action against members of the class connected with said Order.

c.   A preliminary and permanent Injunction restraining the Defendants, their officers and agents, employees and successors, and those persons in active concert with them from suspending minor Plaintiff and all other pupils similarly situated as pupils in the Uvalde Independent School District from attending classes in the 1969-70 school year because of the exercise of constitutionally protected rights hereinabove set forth;

d.   An Order awarding minor Plaintiff compensatory damages in the amount of Fifty Thousand Dollars ($50,000.00), together with legal interest thereon and costs of court against Defendants, individually, both jointly and severally;

e.   An Order awarding minor Plaintiff exemplary damages in the amount of One Hundred Thousand Dollars ($100,000.00) against the Defendants, individually, both jointly and severally;

f.   An Order awarding Plaintiffs reasonable and necessary attorney's fees;

g.   An Order awarding Plaintiffs such other relief, whether in equity or in law, as the Plaintiffs may show themselves

justly entitled to receive.

_Pat Maloney_

PAT MALONEY
1000 Alamo National Building
San Antonio, Texas    78205


_Jesse Gamez_

JESSE GAMEZ
1000 Alamo National Building
San Antonio, Texas    78205


Of Counsel:
MARIO OBLEDO
International Building
San Antonio, Texas
Attorney for Mexican-American
Legal Defense Fund

JESSE GAMEZ
ATTORNEY AT LAW
ALAMO NATIONAL BUILDING
SAN ANTONIO, TEXAS 78205
——
TELEPHONE
226-5125
AREA CODE 512

February 23, 1970

Mr. E. P. Shannon
Robb Elementary School
Geraldine Street
Uvalde, Texas 78801

Mr. R. E. Byrom
311 N. Getty
Uvalde, Texas 78801

Dr. Dean P. Dimmit
720 N. Getty
Uvalde, Texas 78801

Mr. Al Dishman
320 Minter
Uvalde, Texas 78801

Mr. Jake Ianning
204 N. Getty
Uvalde, Texas 78801

Mr. Taylor Nichols
Attorney at Law
200 E. Nopal
Uvalde, Texas 78801

Mr. Buell Stewart
928 E. Nopal
Uvalde, Texas 78801

Gentlemen:

  Several of the concerned citizens of your city contacted
me to assist them in connection with presenting to you several of
their grievances about Robb Elementary School.

*Exhibit No. 1*

FILE COPY

Page 2- Robb Elementary School

        We are hereby requesting that you please compliment
us with a special school board meeting at your very earliest con-
venience so that these complaints may be discussed with you.

        I am satisfied that compliance with their request will
prevent further dissatisfaction and further problems.

        Kindly contact me at your earliest convenience.

                              Very truly yours,

                              JESSE GAMEZ

JMG: hs
cc:     Texas Education Agency
        201 E. 11th Street
        Austin, Texas

        Senator Joe Bernal
        Capitol Building
        Austin, Texas

        Senator Ralph Yarborough
        Senate Office Building
        Washington, D.C.

We, the undersigned, have on this 11th day of February, 1970, gathered to jointly and severally bring to the attention of F. P. Shannon, principal of Robb Elementary School; the Superintendant, R. E. Byrom; the School Board and the public in general, the following grievances which we think should be immediately remedied, to-wit:

1. We think that the ability to speak two languages is a blessing bestowed on us by our heritage and that those that are fortunate enough to know Spanish, in addition to English, should be allowed to exercise such a gift. At Robb Elementary School our children are not permitted to use Spanish based on the false reasoning that they can better learn English. All of us know that we are there to learn, in general, and not necessarily only to learn English. We think that children should not be punished whenever they speak Spanish and that bi-lingual education should be investigated for our schools in Uvalde, Texas and if found beneficial then it should be used.   See article taken from Amarillo newspaper.


2. The per capita restroom facilities at Robb Elementary School are not adequate for the student population and in one instance you will find, if you investigate, that there are as many as two hundred children using the same facilities. This in turn generates unsanitary conditions where no child should be allowed to walk around.  This condition is not present at the other elementary schools but is significant only to that school which is predominantly Mexican-American in population. We think that adequate and immediate remedies by way of installing new and working commodes should be taken.


3. The drinking facilities at Robb Elementary School because of the lack of water pressure creates unsanitary conditions because children at many times have to "suck" the water thereby catching the germs that may be there for whatever reason you might imagine. The remedy for

this problem is obvious. It is so obvious that we wonder why the person that is in charge, namely Mr. Shannon, has not abated this problem which could have been easily discovered by merely walking by the water fountains.

4. The unnecessary prohibition of common children's games should not be allowed. There is a rule at Robb Elementary School which was adopted and introduced by Mr. Shannon that children should not be allowed to play marbles because this leads to gambling. He further prevents the playing of tops as this is a "dangerous game". In effect he does not allow games that are generally allowed in schools and play-grounds all over the Country.

5. At Robb Elementary School they have certain cafeteria regulations that border on dictatorial practices. For example, Mr. Shannon has a rule that children should eat within ten minutes. If for some reason some youngster finishes within five minutes, he has to wait for the balance of the ten minutes until he is allowed to leave his seat and walk out of the cafeteria. The worst part of this rule is that if a child is only half way through with his meal and the ten minutes are overwith, he has to leave and go the rest of the afternoon on only half a meal. We the undersigned understand that you have to have rules in order that everybody can have their meals but by the same token we do not think that they should be unreasonable.

6. We can see the validity of the rule that children should not be allowed to chew gum in the classroom but we fail to see why children should not be allowed to chew gum during recess while on the playground. This silly rule merely illustrates the type of practices and unnecessary bylaws which Mr. Shannon allows in his school.

7.  We think that a school should be pretty as well as having well as having an academic atompshere.  Robb Elementary School is comple-tely barren and has hardly any grass.  Mr. Shannon has had numerous opportunities to plant trees and shrubs and has summarily denied this luxury to the children at school.  On one particular instance a fine citi-zen from the City of Uvalde volunteered to donate trees to the school but they were denied by the principal for no reason whatsoever.  This again illustrates the carefree and uninterested attitude of the head of the school.

8.  On many occasions that we have visited the school we have noticed that the playground is highly littered.  Upon further investigation we have found that the janitorial staff is undermanned and that they in fact have only one person picking up litter for approximately 550 active children.

9.  Children, regardless of age, should have some kind of a voice in their student government, as insignificant and miniscule as it may be to the eyes of us adults.  At Robb Elementary School the children do not have  the confidence to go to their principal and present a grievance. We do not think that the children should run the school but we do think that they should have the confidence to go tell their principal that the commodes are stopped up or that the drinking fountains have no pres-sure.

10.  This grievance is closely related to the previous one but this is injected to bring up the lack of teacher-principal raport.  At Robb Elementary School Mr. Shannon has intimidated many parents to the point that if they have some complaint they have to keep it to themselves.

Until recent, the PTO meetings were held at 3:15 P. M. which in an inopportune time for many working parents. In addition to this the nominating committee was composed of teacher and teacher aides thereby insuring all officers to be either school employees or the personal friends of the principal. We think that further strides should be taken to make parents more active in school activities and that the principal should invite the parents to visit the school to see how their children are doing in their studies. Many times parents have gone to the principal to complain or discuss some idea. This is always shrugged off by saying that it "is up to the school board and I have nothing to do with it". A very good example is that of (1) field day; (2) Christmas programs; and (3) competitive sports, to name a few.

11. A sign was put up at the school bulletin by Mr. Shannon, said sign read "NO MESKIN FOOD SERVED HERE". Such derogatory practices should not be attributed to the head of an elementary school. In the event that Mr. Shannon denies this, we submit that he permitted it to remain there for several days to where many students complained to their parents.

12. In many instances some students get out earlier than their siblings and are not permitted to stay on the playground until everybody is out. This rule is many time unreasonable in that many times the child could
                                    the parent
wait for his parent if/happens to be a teacher or teacher aide rather than walk home by himself. We understand that a class of thirty child-ren cannot be conducted properly if there are another thirty children playing outside. By the same token we do not think this rule should be carried out whenever the weather is freezing and a child has to walk
                                    a ride
home rather than catch/with his parent. This strict rule against illus-

trates the unreasonableness of the principal of Robb Elementary

School at a time when flexibility would be in order.

13. At Robb Elementary School the children are not permitted any type

of competitive  programs whereby children can show their exeellence

in either a sport or in a given academic field.  These type of programs

whenever they are introduced to the principal by one of the teachers

are shunned by the principal as "involving too much work".

We think that the following are some possible competitive activities

which should have been introduced many years ago.

  A.  Christmas program

  B.  Assemblies with educational programs

  C.  Educational films

  D.  Competitive sports such as track meets or

  a field day other than just football

14.  The playground equipment at the school is completely inadequate

and is composed of broken down bats, battered balls and footballs.  We

think that our children should be provided with as good equipment as

some of the other elementary schools in Uvalde.

15.  We think that safety measures should be taken to assist children

in their walk from home to their school.  At Robb Elementary School

the children have no safety signs, no safety crosswalks, no "momma"

patrol, insufficient sidewalks, and lack of/speed control signs.  We

         adequate

think that immediate measures should be taken so that no more chil-

dren should be killed or injured.



The above article was taken from an Amarillo newspaper several
months ago. We think that it clearly shows what an unbiased Anglo thinks of
the future of discriminating brother Anglos.

The above grievances are not by any means conclusive but they by and large clearly illustrate how unreasonable, capricious, arbitrary and discriminatory Mr. Shannon has been for approximately fifteen years. We sincerely feel that Mr. Shannon has done very little towards the betterment of each child and that his teaching methods are outdated and contribute nothing towards the educational ends of the community. We think that Mr. Shannon has done a very poor job as principal and that it would be better if he submitted his resignation or if the school board would seriously consider not renewing his teaching contract. We have notified by carbon copy of this petition the Superintendant, the School Board, and the Texas Education Agency as well as other interested persons and agencies. We think and believe that Mr. Shannon instead of helping each child has intimidated him and shattered his young mind to the point that that in many instances he has actually discouraged a young mind from pursuing further education instead of encouraging to seek better and higher goals. We will be more than happy and would actually welcome the opportunity to discuss either in private, or preferably in public, the above grievances with the hope that our children and grandchildren will not have to put up with such practices. In conclusion we hope that we have illustrated the practices that we are sure you would not bestow on your children, and that you would not, we are sure, wish on our children merely because we live on the wrong side of the tracks.

RESPECTFULLY SUBMITTED

(See attached signatures)

CC:

Superintendant
School Board
Texas Education Agency

Eluterio Rodriguz

Mrs. Manuela Flores 527 Villa St.

Bravio n Perez 816 W. Cargile

Conrado Hara 525 Villa St.

Gabriel Tafalla Batesville Rd. Uvalde, Tx.

Roquel Tafolla Batesville Rd. Uvalde Tx.

Gladice Tafolla 555 Juarez St.

WE, THE UNDERSIGNED, HAVE READ IN ITS ENTIRETY THE
AFOREGOING PETITION SHOWING FIFTEEN GRIEVANCES AGAINST ROBB
ELEMENTARY SCHOOL IN UVALDE, TEXAS AND BY OUR SIGNATURE
WISH TO SHOW OUR INTEREST WITH THE HOPE THAT IMMEDIATE STEPS
WILL BE TAKEN FOR THE BETTERMENT OF SAID SCHOOL AND FOR THE
POSSIBLE OF OUSTING OF E. P. SHANNON.

Alma L. Costillas     S. Camp
Mr. & Mrs. E. Lugo        S. Camp
Mr. & Mrs. Frank Candes   s. comp
Anita S Will
Mr. Jun Canio
Alepardo V. Cashitho    558 Jersey st.
Mr & Mrs Belen B Cruz
Israel Tomasa S. oyales .   231 E. Mill ST.
Mrs. Delfina S. Perez  123 E Mill

Victor Luna  664 S. Camp
Debi. Arreola   Box 52
Ponciano Arreola Box 52
Larmyma Arreola Box 52
Juan   Arreola  Box 52
Parfirio Arreala box 52
Raquela Arreala Box 52
Elisia   Arreala Box 52
Adelfa  Arreala Box 52
Marial  arreola  Box 63
Lernada Arreala box 63
Anestasia Arreala Box 63

### ROBB ELEMENTARY SCHOOL
E. P. SHANNON, PRINCIPAL
#### UVALDE, TEXAS

3781

March 4, 1970

Mr. Josue Garza
Robb Elementary School
Uvalde, Texas

Dear Mr. Garza:

This is to inform you that because of your
attitude toward complying with the policies of the
school, and in the best interest of the school, I
find it unadvisable to recommend you for re-employment
in the Uvalde Independent School.

Sincerely,

*E. P. Shannon*

E. P. Shannon

EPS/ogi

*Exhibit No. 2*

# Uvalde Independent School District

R. E. BYROM, Superintendent

Post Office Box 1909

**Uvalde, Texas, 78801**

March 10, 1970

Mr. Jesse Gamez
Attorney at Law
Alamo National Building
San Antonio, Texas 78205

*3781*

Dear Mr. Gamez:

I will first of all acknowledge receipt of the correspondence from you
dated February 23, 1970. I would assume that you intended to direct
copies of this information to all members of the Board of Trustees of
the Uvalde Independent School District. You failed, however, to include
copies to Mr. Garvis Marsh and Mr. R. W. Shepperd who are members of the
Board of Trustees. We have taken the liberty of making additional copies
of the information from you for these two Board Members.

I cannot fail to note that you sent copies of this information to Senator
Joe Bernal and Senator Ralph Yarborough. Perhaps you did not know that
Senator Bernal is not the Senator for the District which includes Uvalde
County and that our Senator for this area is Senator Pete Snelson. Also,
Texas has <u>two</u> senators in Washington which includes Senator John Tower,
and this District is represented by Congressman O. C. Fisher. We have
furnished Senator Snelson, Senator Tower and Congressman Fisher with
copies of the information furnished by you together with copies of this
reply. We are also furnishing Senator Yarborough with a copy of this
reply, and we are naturally pleased that the Texas Education Agency in
Austin is receiving this information so that they may be apprised of
this matter.

May I first state to you that each member of the Board of Trustees of
the Uvalde Independent School District is a man dedicated to the job
of doing everything possible for each and every child in our school sys-
tem. As a Board, we feel that we are striving to make our system the
best system possible for all children with the means we have at our dis-
posal. If the Board or any member thereof, is derelict in this endeavor,
then naturally this should be made known. I can only assure you, however,
that we will continue to do our best for all of our schools and for all
of the children.

The Board notes with some concern and regret, that of the 32 people
named on the petition concerning Robb School, some 16 of these have no
children in Robb School at all! Yet, these very same people are clamoring
for the scalp of one of our finest and most dedicated school principals,
E. P. Shannon. In the past the Board has felt that the School District

*Exhibit No. 3*

Mr. Jesse Gamez
Page 2
March 10, 1970

was indeed fortunate in having Mr. Shannon as a principal of one of our
elementary schools.  The Board takes this opportunity to re-express it's
faith in his qualifications and ability.  Mr. Shannon is a veteran educa-
tor with more than 25 years of experience.  He has spent most of this
time in the educational field loving and caring for elementary school
children of Mexican-American origin.  Quite frankly, the Board is unani-
mously disturbed over this personal attack on Mr. Shannon and feels that
an apology is in order, rather than a complaint.  Indeed, some of the
accusations would appear to be slanderous.

Contrary to the information contained in the petition, it may be of
interest to point out several facts concerning our School District.  The
District operates and maintains four elementary schools, and three of
these have a majority of children who are of Mexican-American origin.
In fact, one of our other schools, Anthon Elementary School, has a greater
percentage of students who are of Mexican-American origin than does Robb
School.

Another interesting fact indicates the total amount of funds expended per
child (on an average) in each elementary school.  Present federal programs
obviously make the expenditure of the larger sums possible.  These figures
are as follows:

| School | Total of Local and Federal Funds Expended Per Child | Percentage of Students of Mexican-American Origin |
|--------|-----------------------------------------------------|---------------------------------------------------|
| 1. Anthon | $909.64 | 97.5% |
| 2. Robb | $830.10 | 92.4% |
| 3. Benson | $546.97 | 51.4% |
| 4. Dalton | $487.91 | 22.8% |

The Board is proud of the fact that the District has been able to partici-
pate in the available federal programs, making it possible to expend the
larger sums of money per child in Robb and Anthon Elementary Schools. This
information is furnished simply to indicate the manner in which we attempt
to provide the best possible facilities and services for our school chil-
dren at Robb School.

The Board has investigated each item mentioned in the petition, some of
which concern individual school operating policies, and some concern school
facilities and maintenance.  Our four elementary schools, including Robb,

Mr. Jesse Gamez
Page 3
March 10, 1970

all have similar maintenance and repair problems, which are remedied as
quickly as possible with the staff and means at our disposal.  Until
recently each of our elementary schools had one full time custodian and
some additional part-time help.  However, the superintendent of our sys-
tem has recently taken one of our maintenance employees from other acti-
vities and has placed him at Robb and Anthon Schools to work a half-day
at each school.  This, of course, provides more custodial help at Robb
and Anthon Schools than at the other two elementary schools.  Naturally,
we are hopeful that our future financial picture will allow us additional
personnel at all schools.

The Board of Trustees determined at its regularly scheduled meeting on
Monday, March 9, 1970, that there does not appear to be sufficient justi-
fication for calling a special board meeting in order to discuss these
complaints.  The Board supports Mr. Shannon in his school policies which
are apparently designed to provide for the education, safety, welfare and
health of the Robb School children in the best manner possible.  Also,
any operational or maintenance problems which exist at Robb School will
be promptly taken care of.

Naturally, we are hopeful that those persons who have children at Robb
Elementary School who signed the petition will find, as the Board has,
that Robb Elementary School is a school to be proud of with a fine Admin-
istrator, excellent staff, facilities and grounds.  The Board of Trustees
has instructed me to direct this letter to you in reply to your letter of
February 23, 1970, together with the enclosed petition.

Very truly yours,

C. A. Dishman, President
Board of Trustees
Uvalde Independent School District

CAD/mlg
Enclosure
Copies to Texas Education Agency
         Congressman O. C. Fisher
         Senator John Tower
         Senator Ralph Yarborough
         Senator Pete Snelson

*Robb*

721 Ft. Clark St.
Uvalde, Texas
April 8, 1970

Board of Trustees
Uvalde Independent Sch. Dist.
Uvalde, Texas

Dear Gentlemen:

I hereby respectfully request the Board of Trustees to
grant me a hearing so that I may rebutt the allegation made
against me. Mr. Jesse Gamez will appear with me and will
represent me.

Mr. Gamez and I understood that a hearing was to be
held on the month of March, but for some unknown reason it
has not been granted. Due to this, I have instructed Mr.
Gamez to do anything he deems necessary to get me reinstated.
I have asked him to contact the Commissioner of Education
if the need should arise.

This notice serves as a follow-up to the written request
I made Monday afternoon before Mr. John Harrel.

Respectfully,

*Josue Garza*

Josue Garza

*Exhibit No. 4*

It is relevant that within the school system exists some inequities that should be corrected or eliminated. It is also relevant the administrators themselves avoided the issue completely so our alternative is to resort to a walk-out to try to correct these inequities.

It has been brought to our attention that Mr. George Garza has been denied a renewal of his contract for no justifiable reason. Since we the students have seen and realized Mr. Garza's potentials and abilities, which are an asset to our being, we are forced to ask the school board to take action on the renewing of Mr. Garza and the contract which up to now has been ignored and denied.

We also demand that the following items be considered and acted upon:

1. It is stated in the United States Constitution that in our country an indiviual has the freedom to seek justice and his well-being, therefore the students who have participated in this should not be punished or repremended in any form or fashion for their just causes which are being demanded.

2. It is also relevant that the principal of the Robb elementary school is not capable of holding the position that he has. Therefore we demand his resignation.

3. The grade level in Uvalde is very low considering our grade level with the Anglo in our community. Therefore we see it fit to demand that bi-lingual education be incorporated into the primary grade curriculum.

4. It has also been brought to our attention that the contribution of the Mexican-American to this society and culture has not been given proper recognition. Therefore, we also demand that the textbbok be revised as well as teaching methods in order to properly reflect our contribution to the "Anglo" dominated society.

5. We also see it fit to demand that if any teacher in the system disagrees politically or philisophically with the establishments view, that they not be dismissed nor intimidated.

6. There have also been complaints by students that they have been ridiculed by their teachers because of their language barrier and also of their culture. Therefore, we see it fit to demand that every teacher, administrator and member of the staff be educated so that they know our language--Spanish--and be able to pronounce our names correctly, understand our history, tradition, and contributions of Mexican-Americans. How can they expect to teach us if they do not know us? We also demand that more Mexican-American teachers be hired.

7. We want September 16 as a holiday, but if this is not possible, we want an assembly with speakers of our own. We feel that it is a great day in the history of the world because it is the date when the Mexicans were liberated from the harsh rule of Spain. Our ancestors fought in this war and we owe them tribute because we are Mexican too.

8. Being civic minded citizens, we want to know what the happenings are in our community. We therefore demand the right to have access to all types of educational literature, and to be able to bring it on campus.

9. It is also demanded that a course on Chicano education with the value of full credit be offered in the high school.

10. Any and all nominations and elections done while the Mexican Americans were out should be declared invalid.

11. Since in the last four years only five Mexican Americans have been chosen to "Who's Who", it is plain to see that the prejudice lies with the teachers, we demand that the elections to "Who's Who" be left to the student body.

12. We demand a Mexican American counselor be hired at Uvalde High School and Junior High so the Mexican American may benefit.

13. Seeing that the majority of students at Robb Elementary are Mexican American, we demand a Mexican American principal.

14. All students who participated in the walk-out should be allowed to make up work missed with the teachers help.

*Exhibit No. 5*

We are here to try to bring the walk-out to a just conclusion. During our last meeting with you on June 8,1970, we left with the understanding that you were to consider the demands of the students. We have come to find out what you have accomplished on this matter. While we stand firm by the demands of the students, (with the exception of nos. 2,10,11,13) we have tonight several more proposals to present to you. Some are concurrent with the original list.

We want immediate action on our first proposal tonight. This action will determine our future plans.

1. we want the board to reconsider its action to retain the children who participated in the walk-out. We definitely do not want our children retained, especially those whose grades merit that they be promoted.

2. The Parents having children in Anthon and Robb schools should have a choice as to whether or not they want their children to attend regular or follow-through classes.

3. While follow-through may have its advantages, we believe bi-lingual education is better and more advantageous for our children. Therefore, we would like to see it incorporated into the Uvalde Independent School System.

4. We want to stress that we will not tolerate any threatening or ridiculing remarks made to our students, and we feel that the school board should make this clear to the teachers and administrators.

5. We want a general evaluation of the educationl system similar to the one conducted un 1965. So that administrators, teachers and parents will know know how we stand as far as teaching standards.

6, If our students want to participate in athletics, they should not be denied this because of their involvememt with the walk-out.

*Exhibit No. 6*

7. We feel that the school board should take part in insuring the safety of our children on their way to and from school, and should take steps to have a traffic signal installed at the intersection of Highway 90 West and Farrar street, also at the intersection of Geraldine and So. Getty where a child was recently killed.

8. We would like for the board to have their regular monthly meetings at the four elementary schools, rotation each month from school to school. This would bring the board closer to the community, provide more ample space for parents wishing to attend, and provide a better communication with the parents of all the students.

9. We want four of the school-board members to be elected from each of the school zones, one from each respective zone, and that the three remaining members be elected at large. This will bring a better representation of each school to the board and will thus create a better relationship and understanding.

10. We request that personnel working in the administrative offices and teachers of the same family not be allowed to work in the same school.

11. We feel that the way Texas history has been taught in our schools is psychologically damaging to the Mexican-American student. Our children need to be taught that they are also a part of this country, that their ancestors also made heroic contributions to the history of Texas and of the Southwestern part of the United States. Therefore, we urge that the books on Texas history be revised.

12. Along this line and per a suggestion of Supt. R.E. Byrom we would like for the following books to be purchased for the libraries of Jr. High and High School:

1. Lord, Walter, *A Time to Stand*, New York: Harper and Brothers, 1961  255 p.

2. Mc Williams, Carey, *North from Mexico, - The Spanish -speaking people of the United States*, New York: Greenwood Press  1968  324 p.

3. Sanchez, George I., *History Culture and Education*

4. Wagner, Rev. John A. *The Role of the Christian Church*  pp. 27-45

5. Talbert, Frank X., *The Day of San Jacinto*, New York; Mc Graw- Hill Book Co. Inc; 1959  261 p.

6. Servin, Manuel P., *The Mexican Americans; An Awakening Minority*, Beverly Hills, Calif. Glencoe Press, 1970  235 p.

WE SHALL OVERCOME

Since it is obvious that within our goverment system a special consideration is being shown to the third and fourth generation of American of ethic minorities we the third and fourth generation American of German decent, "an enethic minority" therefore see fit to demand the following items be considered and acted upon in our system.

1.   It is stated in the United States Constitution that in our country an individual has the freedom to seek justice and his well-being through due process of law. We therefore demand anyone violating the freedom of others be punish to the fullest extent of the law.

2.   The grade level in Uvalde is very low considering our grade level nationally of the German-American. Therefore we see it fit to demand that special test be given and those that can pass be allowed to and not be held back by the ignorant.

3.   It has also been brought to our attention that the contribution of the German-American to this society and culture has not been given proper recognition therefore we also demand that the text books be revised as well as teaching methods in order to properly reflect our contribution to society.

4.   We also see it fit to demand that if any teacher in the system disagrees politically of philosophically with the establishment's views that they refrain from doing so because their views might not agree with the child parents. Their purpose in the system is to teach children how to think not what to think. To do other than this should be grounds for dismissal, after all we Germans have our own ideas too.

5.   If the American School is going to show any special consideration toward any one race, we therefore see it fit to demand that every teacher, administrator, and member of the staff be educated so that they know our language German and be able to pronounce our names correctly, understand our history, tradition, and contributions of the German-American. How can they expect to teach us if they do not know us. We also demand that more German-American teachers be hired.

6.   We want November 11 as a holiday. But if this is not possible, we want an assembly with speakers of our own. We feel that it is a great day in the history of the world because it is the date when the German's really start to get Bombed. Our ancestors got smashed every year at this time and we want to pay tribute because we are Germans too

Exhibit No. 7

7. Being civic minded citizens we want to know what the happenings
   are in our community.  We therefore demand the right to have access
   to all types of Educational Literature and be able to bring it on
   campus.  Such as how to succeed in life by Hardwork.

8. It is also demanded that a course on German Education with the value
   of full credit be offered in the High School.

9. That all school elections be postponed indefinitly until we produce
   enough German-Americans to win.  As long as we have that old rule
   a majority wins.

10. We demand a German-American Counselor be hired at Uvalde High School
    and Junior High so the German-American may benefit from all these
    minority programs that are set up to help the ethnic minorities.

11. Seeing that the minority of students in our elementary schools are
    German-American we demand German be taught to the first three grades
    of each school.  Why should our children have to learn other ethnic
    languages if they don't learn German first.  That one day each week
    we be served German food in the cafeteria.

12. We demand also that people quit blaming everything on the anglos
    because the anglo is the German.  We are an ethic minority, the
    same as every other race in this country.

13. We demand that people quit calling us square heads and Krouts.

14. We feel the color of a person's skin should never be used as an
    excuse for failure.  We therefore demand that all children darker
    than a pale white be powdered each morning as they go to school
    in order not to give the German-American children any complex
    about being lighter skin.

We present these demands to be considered along with all the other ethnic
minority demands, that if this system grants special consideration to
one ethnic minority it must also under the law of equal rights grant the
demands of German-American and any other ethnic group.

BELIEF:

Under the United States Constitution all people are born with equal privileges. This country was founded by people of all national origin, therefore no single ethnic minority should have any special privileges that are not enjoyed by other ethnic minorities.

PURPOSE:

The purpose of the German-American Parents Association is to prove that all grievances can be properly redressed through due process of law, through established procedures in an adult manner, rather than Boycotts, Walkouts, Firebombing, Threats, Intimidations, or any other forms of immature behavior.

AIMS:

Aims of the German-American Parents Association is to call attention to the facts that:

1.  No ethnic minority has any special lease on poverty.

2.  That people of all national origins have had to overcome some special problems arising from their ethnic backgrounds.

3.  That the color of a persons skin, their last name, religious beliefs, the language of their forefathers, or any other phony alibi should not be used as an excuse for failure.

4.  We believe that the responsibility for success or failure lies squarely on the individual if they are willing to pay the price that is demonstrated by life, they will succeed.

GOALS:

The goals of the German-American Parents Association is to preserve the strength of America.  By preventing anyone ethnic minority from forcing all others into their mold.

That the contributions to our country by the German-American can easily be demonstrated, therefore we have the obligation to insist that if special emphasis is placed on any other ethnic minority, equal emphasis should be placed on the history and culture of the German-American to some degree.