IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS,

DEL RIO DIVISION

FILED
JUN 29 1976
DAN W. BENEDICT, Clerk
By _____ Deputy

| | |
|---|---|
| GENOVEVA MORALES, ET AL. § | |
| § | |
| Plaintiffs § | |
| § | |
| V. § | CIVIL ACTION NO. DR-70-CA-14 |
| § | |
| E. P. SHANNON, ET AL., § | |
| § | |
| Defendants § | |

DECREE

BE IT REMEMBERED that heretofore came on to be heard in the captioned cause the parties Plaintiff and Defendant, and after hearing the pleadings and argument of the parties and considering the Plan of Desegregation and the bilingual-bicultural program proposed by the Uvalde Consolidated Independent School District (the "School District") and that proposed by Plaintiffs, and believing the School District's plan and program to be educationally sound and consistent with current judicial standards, the Court finds:

    1.    That heretofore in August, 1970, the Plaintiffs filed their Complaint in this case seeking injunctive relief against alleged conduct of the School District depriving them of the rights secured by the Thirteenth and Fourteenth Amendments to the Constitution of the United States; U.S.C. §1981, et seq. and U.S.C. §2000d, et seq.;

    2.    That the Plaintiffs in this suit are Mexican-American citizens of the United States who reside in that portion of Uvalde County, Texas which comprises the Uvalde Consolidated Independent School District;

    3.    That the Uvalde Consolidated Independent School District is a school district created and existing under the laws of the State of Texas and that the Board of Trustees thereof is an agency of the State of Texas and is responsible under Texas law for the operation of the School District;

4. That the United States Court of Appeals for the Fifth Circuit in an opinion entered in July, 1975, reversed, in part, the previous decision of this Court; the Court of Appeals holding, in effect, that intentional segregation and/or denial of equal educational opportunity had previously been intentionally practiced upon the Mexican-American students of the School District and directed this Court to mandate a Plan of Desegregation;

5. That the Defendant School District, after such remand by the Court of Appeals, submitted to this Court a Plan of Desegregation, to be effective with the commencement of the 1976-77 school year and, thereafter, submitted to the Court a program for bilingual-bicultural education to be implemented as a part of such Plan of Desegregation;

6. That the Plaintiffs have made no serious objection to the Desegregation Plan nor the date proposed for its implementation; counsel for Plaintiffs' having conceded Plaintiffs' approval of the plan at a hearing held in open court in this cause on April 27, 1976. At that hearing, counsel for Plaintiffs did, however, propose an alternate bilingual-bicultural educational program;

7. The Plan of Desegregation and the bilingual-bicultural educational program proposed by the School District are educationally sound and consistent with current judicial standards and will suffice to convert the School District to a unitary school district;

8. That the Trustees of the School District as constituted from year to year prior to the filing of this lawsuit and those elected from time to time during the pendency hereof have at all times acted in good faith and have not been guilty of obdurant obstinance in connection with the constitutional rights of Mexican-American students or in maintaining their defense of this suit; and

9. That this suit was originally filed in August, 1970; tried in November, 1972 and the first Memorandum Opinion issued by this Court on February 13, 1973. That Opinion revealed tentative

/86

conclusions of the Court but withheld final judgment subject to the then pending decision of the United States Supreme Court in the case of <u>Keyes v. School District No. 1, Denver Colorado</u>, 413 U.S. 189 (1973). Following the decision of the United States Supreme Court in <u>Keyes</u>, this Court entered its Final Order on August 16, 1973, holding that the Defendants and the School District had not intentionally segregated Mexican-American students nor denied equal educational opportunity to them. The United States Court of Appeals for the Fifth Circuit, in an opinion rendered in July, 1975, set aside those findings of this Court but did agree with this Court's holding that it is now necessary that an initial finding be made in cases such as this that <u>intentional</u> segregation or denial of equal educational opportunity be found on the part of the School District as a predicate to the entry of any "desegregation decree" pertaining to pupil assignment, faculty selection and the like. The constitutional question of the duty, <u>vel</u> <u>non</u>, on the part of the School District to remedy ethnic imbalance in the schools in Uvalde was, therefore, obviously, one over which reasonable minds could, and did, differ. On that basis, the Court concludes that special circumstances exist in this case, by reason of the close legal and fact issues involved, to justify the School District in taking the defensive posture that it did, sufficient to deny an award of attorneys' fees to counsel for the Plaintiffs pursuant 20 U.S.C. §1675.

Upon the basis of the foregoing findings, it is, therefore, ORDERED, ADJUDGED AND DECREED as follows:

A. The Board of Trustees of the Uvalde Consolidated Independent School District shall implement the Plan of Desegregation heretofore filed by them in this Court on or about the 7th day of November, 1975. The bilingual-bicultural program presently in use in the School District, and described in the program description recently filed in this Court as an Appendix to the School District's Motion for Approval of Plans, is approved and adopted and shall be implemented by the School District as a part of its Desegregation Plan. The Plan of Desegregation shall be implemented

beginning with the 1976-77 school year and continue thereafter until further order of this Court. Upon the implementation of this plan, the Court finds that the Uvalde Consolidated Independent School District shall be a unitary school district.

  B. The School District shall not discriminate on the basis of race, color or ethnic origin in the classroom seating assignment of students.

  C. Effective not later than September, 1976, the principals, teachers, teacher aides and other staff who work directly with children at a school shall be so assigned so that in no case shall the racial composition of a staff indicate that a school is intended for black students, Mexican-American students or white students.

  D. The assignement of faculty and staff shall be made in accordance with the provisions outlined in <u>Singleton v. Jackson Municipal Separate School District</u>, 419 F.2d 1211 (5th Cir., 1969), so that the assignment ratio of Mexican-American to Anglo teachers in each school is (within 15%) the same as the ratio of Mexican-American to Anglo teachers throughout the entire school system.

  E. Staff members who work directly with children, and professional staff who work on the administrative level, shall be hired, assigned, promoted, paid, demoted, dismissed, and otherwise treated without regard to race, color or national origin.

  F. If there is to be a reduction in the number of principals, teachers, teacher aides or other professional staff employed by the School District which will result in a dismissal or demotion of any such members, the staff member to be dismissed or demoted must be selected on the basis of objective and reasonable non-discriminatory standards from among all the staff of the School District. In addition, if there is any such dismissal or demotion, no staff vacancy shall be filled through recruitment of a person of a race, color or national origin different from that of the individual dismissed or demoted, until each displaced staff member who is qualified has had an opportunity to fill the vacancy and has failed to accept an offer to do so.

G. Prior to such reduction, the School Board will develop or require the development of non-racial, non-ethnic objective criteria to be used in selecting the staff member(s) who is to be dismissed or demoted. These criteria shall be available for public inspection and shall be retained by the School District. The School District shall also record and preserve the evaluation of staff members under the criteria. Such evaluation shall be made available upon request to the dismissed or demoted teacher or administrator.

H. The transportation system of the School District shall be examined regularly by the Superintendent, his staff and/or the School Board. Bus routes and assignment of students to buses shall be designated to insure transportation of all eligible pupils on a non-segregated and otherwise non-discriminatory basis.

I. All school construction, school consolidations, site selection (including the location of any temporary classrooms) in the School District shall be done in a manner which will prevent a re-occurence of a dual school structure and, further, shall be planned and carried out so as to achieve the objective of promoting the continuing complete desegregation of the School District.

J. The School District shall on November 1, 1976 and on April 15, 1977, and annually thereafter on April 15 of each succeeding year, or until further order of the Court, file with the Clerk of this Court a report setting forth the following:

(1) The number of students by race and ethnicity enrolled in the School District;

(2) The number of students by race and ethnicity enrolled in each school of the District;

(3) The number of students by race enrolled in each classroom in each school in the District;

(4) The number of full-time teachers by race and ethnicity in the School District;

(5) The number of full-time teachers by race and ethnicity in each school in the District;

(6) The number of part-time teachers by race and ethnicity in the District;

(7) The number of part-time teachers by race and ethnicity in each school in the District;

(8) The number of inter-district transfers granted during the current school semester or since the last report, the race or ethnicity of the students granted such transfers and the school district to which the transfers were allowed;

(9) A brief description of any present or proposed construction or expansion of facilities, including location, grade to serve, anticipated number of students described by race and/or ethnicity to be assigned to such school, and anticipated date of completion; and

(10) Whether the School Board has sold or abandoned any school facility, equipment or supplies having a total value of more than $500 since the entry of this Order, or the date of the last report filed with the Court.

K. Plaintiffs' Application for Attorneys' Fees is denied and all costs of court in this behalf expended are adjudged against the Defendant School District.

The Court finds that upon implementation of this plan the Uvalde Consolidated Independent School District shall have been converted to a unitary system, but the Court, however, retains jurisdiction in this case and for all purposes and will do so until the Court finds that a dual system will not be or tend to be reestablished in this School District, and for the further purpose of entering any further orders which may become necessary for the purpose of enforcing or modifying this Decree.

SIGNED, RENDERED AND ENTERED on this 28th day of JUNE, 1976.

UNITED STATES DISTRICT JUDGE