IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GENOVEVA MORALES, ET AL., | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | DR-70-CA-14 OLG |
| | § | |
| E.P. SHANNON, ET AL., | § | |
| Defendants | § | |

## PLAINTIFFS' POST-HEARING BRIEF ON DEFENDANTS' MOTION FOR MODIFICATION OF DECREE

### Introduction

This action stems from the Uvalde Consolidated Independent School District's ("Defendants" or "the District") violations of Title VI of the Civil Rights Act of 1964 and the Fourteenth Amendment by maintaining racially segregated schools over twenty years following the *Brown v. Board* decision of the United States Supreme Court. On June 28, 1976, this Court ordered Defendants to comply with a desegregation decree entered by the Court and a plan submitted by the District and thereafter adopted by the Court. On June 22, 2007, Defendants moved to dismiss, and in the alternative moved to modify, the decree entered by the Court. Dkt. No. 110. Genoveva Morales, *et al.*, Plaintiffs, filed their response to Defendants' motion for modification[1] on July 6, 2007 (Dkt. No. 114), and Defendants filed their reply on July 25, 2007, nine days late and without leave of Court. The Court held an evidentiary hearing on July 26 and July 27, 2007. Thereafter, the Court provided the parties with an opportunity to brief the Court on the issue of whether this Court has the authority to enforce its 2002 Order. The Court also

---

[1] Defendants filed a Motion to Dismiss or Alternatively for Modification of Decree ("Defs.' Mot."), but this brief only responds to the District's immediate request to modify the decree and allow for the transfer of seventh and eighth. Plaintiffs' filed an Unopposed Motion for Extension of Time to file a response to the Motion to Dismiss.

requested that the parties brief the Court on the availability of an appeal of the Court's order on the present motion.

Plaintiffs submit this supporting brief and respectfully request that the Court deny the modification sought by Defendants. Contrary to Defendants' assertions, Plaintiffs do not ask the Court to step into the shoes of the educators responsible for the administration in this District. Rather, Plaintiffs request that the Court simply order Defendants to live up to their obligations under the Court's previous Interim Order on the Second Motion for Modification of Decree (Dkt. No. 104) by providing the Batesville School with the appropriate resources necessary to carry out the special curricula program ordered by the Court five years ago. As demonstrated below, the Court has the authority to enforce its 2002 Order.

Argument

I. THE COURT RETAINS THE POWER TO ENFORCE ITS 2002 ORDER CONCERNING THE BATESVILLE SCHOOL.

A. The Court's Broad Powers in Fashioning Desegregation Remedies.

A district court has broad powers in fashioning desegregation remedies. *Valley v. Rapides Parish Sch. Bd.*, 646 F.2d 925, 938 (5th Cir. 1981); *Schwann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies."). The Court's broad equitable power to fashion a remedy for past unconstitutional segregation extends to the Court's ability to enforce the desegregation orders it has entered. *United States v. Lawrence County Sch. Dist.*, 799 F.2d 1031, 1044 (5th Cir. 1986).

In 1976, the Court issued its decree in this case addressing many issues including: student assignments; faculty, staff and aide assignments, hiring, and reductions; classroom

assignments; transportation; facilities; and annual reporting requirements. Decree, Dkt. No. 59. The Court directed the implementation of the District's proposed desegregation plan to assist in carrying out the mandates under the decree at all schools district-wide, with no exceptions. *Id.* Defendants never challenged the Court's oversight over the Batesville School, and, indeed, the District included the Batesville School as part of its desegregation plan submitted to the Court to rid the District of its dual school system.

As the Court professed, the *implementation* of the desegregation plan and the bilingual-bicultural education program "will suffice to convert the School District to a unitary school district." *Id.* The Court retained jurisdiction of the case "for all purposes and will do so until the Court finds that a dual system will not be or tend to be reestablished in this School District, and for the further purpose of entering any further orders which may become necessary for the purpose of enforcing or modifying this Decree." Decree at 6.

School districts cannot simply fall flat on their duties and are "clearly charged with the affirmative duty to take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch."[2] *United States v. Lawrence County Sch. Dist.*, 799 F.2d 1031, 1044 (5th Cir. 1986) (quoting *Green v. County School Bd.*, 391 U.S. 430, 437-38 (1968)). This affirmative duty extends to areas where the vestiges of discrimination remain, including factors such as the quality of education available to the disfavored class of persons and other issues addressed in the desegregation decree and plan. *See Flax v. Potts*, 864 F.2d 1157, 1161 (5th Cir. 1989) ("the quality of education is a legitimate

---

[2] Thus, Defendants' argument that Plaintiffs have not once objected to Defendants' actions over the last 30 years is unavailing because Defendants are under a continuing obligation to convert to a unitary system. Furthermore, Defendants' representations before the Court are inaccurate because Plaintiffs have objected to Defendants' actions. *See* Tr. at 237 (Dr. Brown admitting that Plaintiffs sought mediation through the Department of Justice to address a number of related issues.); *see also* Plfs.' Response to Defs.' Mot. to Dismiss at 5 n.7, fully incorporated herein (noting a number of additional concerns raised over the years with the District).

concern. As the Supreme Court stated, the function of the federal courts is 'to desegregate an *educational* system in which the races have been kept apart, without, at the same time, losing sight of the central educational function of the schools.'" (citing *Milliken v. Bradley*, 433 U.S. 267, 280 n. 15 (*Milliken II*) (quoting *Milliken I*, 418 U.S. at 767) (White, J., dissenting) (emphasis in original)).

In 1995, due in part to the poor academic performance of the District's Latino students district-wide, Defendants took an affirmative step of eradicating the vestiges of discrimination in quality of education by filing a motion for modification of the decree. *See* Defs.' First Mot. for Modification, UCISD Proposed Elementary Grade Arrangement for 1995-96, Ex. 8 at 1; (also attached to Plfs.' Response to Mot. to Dismiss, App.- Ex. P-1 ("1995 Plan"), fully incorporated herein.) The Court granted that motion and modified the plan accordingly. *See* Order dated May 5, 1995.

In 2002, Defendants took a second step towards the elimination of the vestiges of discrimination in the District by filing a second motion for modification of the desegregation plan. As Defendants represented to the Court in their motion, part of the purpose of the modification was to "provide the opportunity to students . . . to attend schools with *special curricula* at the Flores Elementary School (Grade 6) *and* the Batesville School in the School District."[3] *See* Defs.' Second Motion for Modification of Decree, Dkt. No. 97 at ¶5 (emphasis added). Defendants conveyed to the Court, to the community and to the parties that once the order was modified, students in Uvalde Junior High would have the *choice* to attend the Batesville School and take advantage of the special curricula program there, and the students in

---

[3] Defendants' proposed development of the curriculum offered at the Batesville school can be closely analogized to that of magnet schools, which "have the advantage of encouraging voluntary movement of students within a school district in a pattern that aids desegregation on a voluntary basis, without requiring extensive busing and redrawing of district boundary lines." *Missouri v. Jenkins,* 515 U.S. 70, 82-83 (1995).

the Batesville School would have the *choice* to attend Uvalde Junior High. Defs.' Second Mot. for Modification of Decree at 5. The Court entered an order approving the modification.

Defendants' motions followed years of Defendants' utter disregard for the educational needs of the mostly Latino students attending the Batesville School dating back to the time of the decree first entered in 1976. *See* Tr. at 136 (Javier Flores); Plfs.' Resp. to Defs.' Mot. for Modification, Decl. of J. Flores, Ex. P-1 and Decl. of Susana Torres, Ex. P-4. The differing treatment continued through the year 2001, when the independent audit of the Texas Association of School Administrators criticized the District for failing to provide equal educational opportunities to the students of Batesville. *See* Ex. P-12, Audit; Tr. at 172-77 (Becky Rodriguez).

Despite seeking a court order and asking for authority to develop a special curricula program at the Batesville School under the parameters of the desegregation order in 2002, Defendants never established the special curricula program. *See* Declarations of Flores and Torres, Appendix- Exs. P-1 and P-4, fully incorporated herein; *see also* Course Offerings: Uvalde Jr. High and Batesville Middle School, Exs. P-5 and P-6. Defendants carried the obligation to abide by the 2002 Order through the present day but failed to do so. *See Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 439-440 (1976) (parties subject to an injunction must continue to abide by that injunction until that injunction is modified or lifted)). Five years later, instead of fulfilling that obligation for the mostly Latino community of Batesville, Defendants instruct this Court to *fugetaboutit*. However, Plaintiffs urge the Court to exercise its broad powers and full authority to enforce its 2002 Order and require Defendants to develop the special curricula program. *See Davis v. East Baton Rouge Parish Sch. Bd.*, 721 F.2d 1425, 1434

(5th Cir. 1983) ("[A] district court overseeing the desegregation effort must retain jurisdiction to insure that the present effects of past segregation are completely removed.")).

Defendants also suggest to the Court that the Batesville School is not subject to the Court's jurisdiction in this case and that intentional discrimination must have been shown in the Batesville School at the time of entry of the decree. However, both arguments fail. First, the decree makes no mention of excluding the Batesville School from Defendants' obligations under the decree and the Batesville School is identified as a school under the desegregation plan. A school district has an obligation to carry out the Court's desegregation plan at all schools and is not free to pick and choose which schools are subject to the Court's orders. *See Cisneros v. Corpus Christi* 467 F.2d at 152 (rejecting the District's suggestion that the remedy should be applied only to the areas which have become segregated by Board action).

Second, there is no duty on behalf of Plaintiffs to establish intentional discrimination in the District's actions. In cases where a valid desegregation order has been entered to remedy past segregation "cases requiring proof of intentional discrimination . . . simply do not apply." *Davis v. East Baton Rouge Parish Sch. Bd.*, 721 F.2d 1425, 1436 (5th Cir. 1983).

In essence, Defendants' defiance of the 2002 Interim Order set up the Batesville School to fail. It is no wonder that the white student population in the Batesville School has dropped over the years, as well as the overall student population. Plaintiffs urge the Court not to allow Defendants to ignore the Court's 2002 Order that Defendants themselves sought, in part, to remedy the vestige of discrimination in the Batesville School by developing a magnet-related school in a manner that would not substantially burden the Latino schoolchildren.

    B.    Defendants' Argument That the District Cannot Comply With the 2002 Order Requiring a Special Curricula Program at Batesville is, at Best, a Futile Attempt to Escape This Court's Order.

Defendants aver that they cannot feasibly offer a special curricula program at the Batesville School.[4] They do not argue that cost is an issue. Tr. at 259 (Brown). Instead, Defendants claim that there are too few students to participate in the program and coupled with teacher allocation issues, the District is prevented from offering a special curricula program at Batesville. However, as the testimony of Dr. Brown revealed, the low student participation and teacher allocation issues are not real barriers and amount to nothing more than inexcusable delays for not living up to the Court's 2002 mandate and for not providing the Latino students of the Batesville School access to equal educational opportunities.

During the 2006-07 school year, Defendants acknowledged that there were roughly *92* classes at Uvalde Junior High and only *4* at the Batesville program. Tr. at 98; see also Exs. P-5 and P-6. Noticeably absent from the classes offered at Batesville were any programs that would make up a "special curricula" program. Dr. Brown testified that the reason that no special curricula courses were offered at the Batesville School was because they could not "make." Tr. at 99, 102-03. In other words, there were not enough students to take the courses[5] and the number of additional teachers needed to teach the courses did not make sense. *Id.* at 98-99. At the same time, however, on cross-examination Dr. Brown admitted that some courses at Uvalde Junior High School and Uvalde High School enrolled fewer than 10 students per class during the

[4] Curiously, this argument was first made during the evidentiary hearing held by the Court on July 26 and 27, 2007. Defendants had not briefed the Court on the issue, and in fact, believed that they were under so such obligation under the Court's 2002 Order to provide a special curricula program to the Batesville School. *See* Defs.' Mot. to Dismiss and in the Alternative, Mot. for Modification of Decree; Defs.' Reply to Plfs.' Response to Defs.' Mot. for Modification.

[5] Dr. Brown stated this was due in part to either the students inability to qualify for the classes or because the low number of students at the school altogether, but even this assertion was based on mere speculation and no hard evidence was presented on the students' actual qualifications. *See* Tr. at 102-03 (Brown). In any event, if the students entering 7th grade students are not qualified to take the classes coming out of the Batesville Elementary School, they will not be any more qualified to take the classes at Uvalde Junior High School. *See* Tr. at 182 (Rodriguez).

2006-07 school year.[6] *Id.* at 107-11, 189-90. For example in AP Art History, the District enrolled 4 students; in Cheerleading I, 4 students were enrolled; in Spanish IV AP, 5 students were enrolled. Defendants' representations to the Court that special curricula classes at the Batesville School couldn't "make" is ill-founded because, in the same way that Defendants were able to offer certain classes to such a limited number of students attending the Uvalde schools, Defendants could do the same for the Batesville students under a special curricula program.[7]

Defendants also proffered no evidence regarding their reasonable efforts to comply with the 2002 Order. Defendant Brown first testified that the only special curricula class (as opposed to a special curricula program) available at the Batesville School was an Algebra I class offered as a distance learning class. Tr. at 24, 80. Dr. Brown then added testimony about a Spanish course offered at the Batesville School. *See* Tr. at 217 (Brown referring to Defs. Ex. 8). However, Dr. Brown later contradicted his own testimony and admitted that the only classes actually offered to 7th and 8th grade students attending the Batesville School were the basic, core subjects. Tr. at 241-45; Ex. P-19. In fact, the parents of students attending the Batesville School were unfamiliar with a special curricula program offered at their school. Tr. at 135 (Flores); and 158, 247-48 (Susana Torres); *see also* Plfs.' Resp. to Defs.' Mot. for Modification, Exs. P-1 and P-4.

The record before the Court demonstrates that Defendants have neither satisfied their burden of proving that changes in the Batesville School affected compliance with, or the

---

[6] Dr. Brown also testified that some of the AP classes identified at Uvalde High School were combined with other classes or were stand alone, although he could not tell the Court which classes were combined and which were not. Tr. at 221, 236-37 (Brown).

[7] Defendants also failed to explore other available, reasonable and less burdensome methods in providing the special curricula program, such as requiring the Batesville teachers to obtain the special certification needed to teach classes such as pre-AP programs, or having the certified teachers from Uvalde come down to the Batesville School a few time a week—instead of bussing all of the junior high students in Batesville to Uvalde. *See* Tr. at 176-81 (Becky Rodriguez).

workability of the 2002 Order or that Defendants engaged in reasonable efforts to comply with this Court's Order.

      C.      The Burden Under the Modification is Unwarranted and is Borne by Latino Schoolchildren.

The District's current motion to modify also substantially burdens the overwhelming majority of Latino students attending the Batesville School without considering other viable, less burdensome options such as the development of a special curricula program at Batesville. During the 2005-06 school year, the Batesville School enrolled only three white students (3.3%) in grades 6-8 compared with 113 white students (15.1%) enrolled at Uvalde Junior High School. *See* TEA Academic Excellence Indicator System 2005-06 Batesville Middle School Campus Report, Appendix- Ex. P-8 and 2005-06 Uvalde Junior High School Campus Report, Ex. P-9. Defendants' failure to develop the special curricula program, which would be less burdensome on the Latino students attending Batesville, resulted in few, if any, white student transfers into the Batesville School.

Furthermore, although Defendants offered testimony that other students ride the bus to the schools in Uvalde as long as one hour from other locations other than Batesville, they offered no evidence identifying the racial make-up of the children riding the bus or any evidence as to how the bus routes are run. In sum, there is no evidence before the Court that the vestiges in the transportation have been removed to the extent practicable and, thus, the modification should not take place.[8] *See* Defs.' Mot. to Dismiss and Reply. The only evidence before the Court is that Defendants' plan under the modification will substantially burden the vast majority of Latino students attending Batesville and will have virtually no effect on Anglo children. Tr. at 70-71

---

[8] This, despite the fact that Defendant Brown had made the decision to transfer the students from Batesville to Uvalde as early as November 2006 without ever having consulted the Court's 2002 Order. *See* Tr. at 70-71 (Brown).

9

(Brown admitting that the transportation will be borne by the students of Batesville and their parents, which are well over 90% Latino). This could actually result in *furthering* the vestiges of discrimination in the District's transportation system.

As the testimony revealed, students who ride the bus from Batesville are confronted with a number of burdens and barriers and these will be more pronounced for younger 7th and 8th grade students. These barriers include: two hours of lost time in riding the bus to and from the school; the inability to stay for tutoring programs; safety risks in bussing young 7th and 8th grade students with much older high school students; arriving home late if they choose to participate in extra-curricular activities; and a decreased opportunity for parental involvement beginning two years earlier for the junior high students because of transportation problems for the mostly low-income population of Batesville. *See* Tr. at 134-35 (Flores); 183-86 (Rodriguez).[9]

This burden should not be shouldered by the Latino students and their parents, especially in light of Defendants' failure to develop the special curricula program per the Court's 2002 Order. *See Cisneros v. Corpus Christi Independent School Dist.*, 467 F.2d 142, 153 (5th Cir. 1972) ("The length and time of travel for students under any plan must be considered in light of the age of the children, and the risk to health and probable impingement on the educational process. "); *see also Flax v. Potts*, 864 F.2d 1157, 1161 (5th Cir. 1989) ("The contributions which neighborhood schools can make to the quality of education are obvious. For example, where there is less time spent on transportation to and from school, more time is allowed for extra-curricular activities and parental involvement.").

II.   AN APPEAL IS AVAILABLE TO THE NON-PREVAILING PARTY.

The Court also asked for authority on whether an order on the motion to modify is subject

---

[9] *See also* Tr. at 87-90 (Brown observing the importance of parental involvement both in practice, and as required by state and federal law).

to appeal. The Court has stated that it plans to entertain three options: (1) to grant UCISD's Motion for Modification and allow it to transfer all 7th and 8th grade students previously attending Batesville Middle School to Uvalde Junior High School; (2) to deny the Motion, leaving Batesville 7th and 8th grade students in Batesville with the choice to attend Uvalde Junior High; or (3) to order Defendants to develop the special curricula program at the Batesville School as required by the 2002 Order. The effect of the Court's order on any of these options would operate as an injunction. Under 28 U.S.C. § (a)(1), parties may pursue appeals in cases "granting, continuing, modifying, refusing or dissolving injunctions."

Several cases, both in the Fifth Circuit and in the Supreme Court also support the appeal of an order modifying a desegregation plan or decree without dismissing the desegregation decree altogether. In *Valley v. Rapides Parish Sch. Bd.*, the district court issued a plan intended to further desegregate the district. *See* 646 F.2d 925, 938 (5th Cir. 1981). The plan called for the closing of several schools, as well as the forced integration of schools and teachers. *Id.* The school board filed an appeal of the plan without calling for complete dismissal of the desegregation order and the appeal was heard by the Court of Appeals. *Id.* Likewise, in *Flax v. Potts*, after providing the district court with evidence of its compliance over the previous years, the school district moved to modify the busing part of the plan. 864 F.2d 1157 (5th Cir. 1989). The district court approved of the modification and plaintiffs sought an appeal before the Fifth Circuit, which was accepted. Once again, although a dismissal of the desegregation decree was not sought, the appeal of a modification was heard.

## Conclusion

For the reasons set forth above, Plaintiffs respectfully request that this Court exercise its broad equitable powers and order Defendants to comply with the terms of the 2002 Interim

11

Order. In the alternative, Plaintiffs request that the Court order Defendants to develop a comprehensive plan to ensure the success for the Latino students arriving from the Batesville School, to develop, implement and fully support a comprehensive plan to ensure the success of the Latino students attending the Batesville School in grades K-6, including the recruitment and retention of highly qualified teachers and the expansion of the basic educational program at the Batesville School, and order further relief as appropriate.

DATED: August 6, 2007

Respectfully submitted,

David G. Hinojosa (*pro hac vice* pending)
State Bar No. 24010689
Nina Perales
Mexican American Legal Defense and
  Educational Fund, Inc.
110 Broadway, Suite 300
San Antonio, TX 78205
Tel.: (210) 224-5476/ Fax: (210) 224-5382


By: David G. Hinojosa   /S/
    David G. Hinojosa
    Attorneys for Plaintiffs


### Certificate of Service

I certify that a true copy of the aforementioned document was sent to the following *via* hand delivery on August 6, 2007:

Grant Cook
5005 Riverway, Ste. 210
Houston, Texas 77056

By: David G. Hinojosa   /S/
    David G. Hinojosa

12