UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | |
|---|---|
| GENOVEVA MORALES, ET AL § | |
| § | |
| v. § | Civil Action No. 2:-70-cv-00014-OLG |
| § | |
| E.P. SHANNON, ET AL § | |

### AFFIDAVIT OF GREGORIA PONCE

**STATE OF TEXAS** §
§
**COUNTY OF UVALDE** §

BEFORE ME the undersigned authority on this day personally appeared Gregoria Ponce who after being duly sworn stated the following:

1. "My name is Gregoria Ponce. I am not disqualified for any reason from making the following Affidavit.

2. I currently occupy the position of Director of Special Programs (Bil/ESL, Dyslexia and all federal programs) at Uvalde Consolidated Independent School District (the "School District"). I have been employed in various positions by that School District for more than 12 years. I graduated from St. Edwards University in Austin with a BA in Criminal Justice in 1981. I obtained a Masters in Education and Certification in School Administration from Sul Ross University. I obtained my Teacher Certification from Texas A&I University. I am also certified as a bilingual teacher and in school administration.

3. I have read the Plaintiffs' Motion to Enforce Consent Order and for Further Relief (the "Motion") and have found a number of inaccurate factual statements in that pleading. They are:

   a. The School District has not failed to implement and maintain their language program in accordance with the Consent Order nor has it failed to conduct a full external evaluation and adopt best practices. These facts are demonstrated by Exhibits 1-6A described herein below. The external audit (Exhibit 1), the

    Agenda and Minutes of the School District's Board of Trustee's meeting of February 10, 2009 in which the "best practices" were adopted (Exhibit 2) and a contract was entered into with IDRA to help implement those practices. (Exhibit 3). Exhibit 3 is the IDRA proposal for a professional development series of training and technical assistance sessions for elementary and secondary bilingual teachers in the School District. Exhibit 4 is the contract between IDRA and the School District for the implementation of that proposal. Exhibit 5 are the supplemental evaluation reports prepared by IDRA for years subsequent to the year of the initial report (2008). Exhibit 6 is a 2010-2011 evaluation of the School District's Bilingual/ELL programs conducted by Education Service Center Region 20. Exhibit 6-A reflects the follow up training program conducted to implement the recommendations contained in Exhibit 6.

b. Contrary to the statements in unnumbered paragraph 8 at page 5 of the Motion, the District has not failed to adopt a language program for LEP students based on a sound pedagogical theory and has in fact adopted one of the language programs approved by the Texas Education Agency. Nor has the District failed to implement an ELL program with appropriate practices resources, personnel and monitoring.

c. The District's model for ELL students is based on sound pedagogical theory inasmuch as it is approved by the Texas Education Agency, which has also approved the School District's implementation thereof. Furthermore, the model program does incorporate ESL and SIOP strategies, contrary to the statements in unnumbered paragraph 9 at page 5 of the Motion.

d. The District has at all times since the entry of the Consent Order provided ESL instruction aligned with State standards and best practices and has properly identified ELL's students contrary to the statements contained in unnumbered paragraph 14 at page 7 of the Motion.

e. The District has implemented its ELL program in a manner consistent with state and federal law contrary to the statement contained in unnumbered paragraph 15 at page 7 of the Motion.

f.  The District has implemented SIOP and ELPS in both lesson planning and delivery of instruction notwithstanding the statement to the contrary in unnumbered paragraph 16 at page 8 of the Motion.

g.  The District has not violated Section 74.4(d) of the Texas Administrative Code, but in fact is in full compliance with the Texas Administrative Code in connection with its bilingual and ELL programs contrary to the statements contained in unnumbered paragraph 17 at page 8 of the Motion.

h.  The District does provide sufficient and necessary resources to its teachers in implementing the ELL program and the vast majority of all teachers in the high school have received SIOP or ELPS training, notwithstanding the statements to the contrary in unnumbered paragraph 18 at page 8 of the Motion.

i.  The District does not file inaccurate reports to the Public Education Information Management System notwithstanding statements to the contrary contained in unnumbered paragraph 22 at page 11 of the Motion.

j.  Notwithstanding the statements to the contrary in unnumbered paragraph 23 at page 11 of the Motion, the District makes every effort to comply with all pertinent requirements for the exiting of ELL students. In the 2009-2010 school year the TEA revised those requirements and that revision was interpreted for the School District by Region 20. The School District followed the interpretation provided by Region 20 only to later learn that it was not altogether accurate. That problem has now been resolved.

k.  The District appropriately monitors its ELL students in a number of different ways and does not remove students from the program that do not meet the academic criteria for such action, notwithstanding statements to the contrary in unnumbered paragraph 24 at pages 11-12 of the Motion.

l.  The District maintains appropriate paperwork on all ELL student files, notwithstanding statements to the contrary in unnumbered paragraph 25 at page 12 of the Motion.

    m.    The District does properly monitor the academic well-being and academic performance of its ELL students notwithstanding the statement to the contrary at unnumbered paragraph 26 at page 12 of the Motion.

    n.    The School District does not intentionally exit students from its ELL program who do not meet the statutory requirements for such action, notwithstanding the statement to the contrary in unnumbered paragraph 27 at page 12 of the Motion.

    o.    The School District uses the exit criteria required by Texas law in exiting its ELL students from the program and properly maintains the LEP student folders, notwithstanding statements to the contrary at unnumbered paragraph 28 at page 13 of the Motion.

    p.    In response to the statements contained in unnumbered paragraphs 29 and 30 at page 13 of the Motion, the School District would show that to the extent any ELL students were exited from their program without having achieved minimal academic success it was either an oversight on the part of District personnel or there were other good and sufficient reasons to allow that child to exit the program.

4.    The Motion repeatedly refers to a Report by Lina C. Flores (Exhibit 1 to the Motion). That Report contains a number of factual misstatements. The most egregious of which is found at page 9 of the Report where Ms. Flores states that the School District "has failed to update its 2008 Bilingual Handbook. In fact, the School District has updated its Bilingual Handbook each year since 2008. A copy of the current updated handbook for 2010-2011 is attached as Exhibit 8 to this Affidavit.

5.    I am familiar with the instructional records of the School District. I have reviewed those records in order to identify documents pertinent to the Plaintiffs' Motion. Those documents that I have identified which substantiate the factual contentions of the School District in connection with that Motion are the following:

    <u>Exhibit 1</u>.    Audit/Evaluation Proposal for Uvalde Consolidated Independent School District Bilingual/English as a Second Language (BE-ESL) Program issued by the Intercultural Development Research Association ("IDRA") dated October 7, 2008. This is the external evaluation of the School District's Bilingual and English as a second language program that the School District agreed to have performed as

4

part of the Consent Order. The Plaintiffs agreed on the selection of IDRA to conduct that audit.

Exhibit 2. A copy of the Agenda and the Minutes of the meeting of the School District's Board of Trustees held on February 10, 2009. At this meeting the Board received and considered the IDRA Audit/Evaluation Report and adopted it as the Best Practices for teaching strategies for English language learners. (Item 10 of the Agenda and Item 10 of the Minutes).

Exhibit 3. In connection with its report, IDRA made this proposal to the School District for a professional development series of training and technical assistance sessions for elementary and secondary bilingual teachers in the School District in order to insure the implementation of the recommendations contained in the 2008 audit/evaluation.

Exhibit 4. This is a true and correct copy of the contract between IDRA and the School District to help implement the proposal is attached as Exhibit 3.

Exhibit 5. In an ongoing effort to improve its entire Bilingual/ELL programs, the District has continued to contract with IDRA for it to continue to evaluate the School District's performance each year since the initial evaluation dated in October 2008. Attached as Exhibit 5 hereto are copies of the supplemental evaluation reports prepared by IDRA for the 2008-2009, 2009-2010 and 2010-2011 school years.

Exhibit 6. In addition to receiving those evaluations, the School District contracted with the Education Service Center Region 20 to perform a separate evaluation of its Bilingual/ELL programs in the Fall of 2010. Attached as Exhibit 6 hereto is a true and correct copy of the report of such evaluation dated January 2011. This report, at the first page, contains a chart which illustrates the improvements achieved at the School District in every subject as well in "all tests" of the percentage of bilingual/ESL students in the District between the 2009 and 2010 school years. These improvements are a direct result of the School District's continuing efforts to identify and remedy any deficiencies in their Bilingual/ESL programs. The 2011 statistics are not yet compiled, but I have every reason to believe that they will reflect the same pattern of continued improvement in the achievement of all students and particularly the Bilingual/ESL students.

Exhibit 6-A. This document reflects the staff testing and evaluation conducted as part of the 2010-2011 evaluation by Education Service Center Region 20 in the fall of 2010. As a result of the survey, the teachers were given specific training on all aspects of the Bilingual/ELL program in February 2011.

Exhibit 7. These documents are examples of three sets of reports that the School District generates in monitoring and tracking the performance of its ELL students. The first, entitled "Uvalde CISD-PBMAS" reflects percentages of passing scores on the TAKS examinations showing the difference between the results in 2008-2009 and 2009-2010. The portion of the exhibit entitled "EDUPHORIA" is an example of a report produced for every student in the District reflects the results achieved by an ELL student reflecting her progress between the 2008 and 2010 school years. This report is generated after every test taken by the ELL students. The next section of this exhibit is titled "Uvalde CISD TELPAS TAKS Scores – 2010-2011" which reflects the progress and achievement on different criteria of the ELL students in every grade. The next section of this exhibit, entitled "Uvalde CISD Bilingual/ESL Program 2010-2011," identifies the progress of all of the LEP students in the entire School District. This is a report prepared on a continuing basis by me. It provides information not only on test results, but also all other criteria that are tracked to not only measure students' success but, hopefully, to remedy any problems being experienced by the individual students. This report is prepared by me at least every nine weeks during the school year. All of these reports in this Exhibit 7 illustrate that the claims in the Motion that the District fails to monitor and track the performance of the LEP students is incorrect."

Further Affiant sayeth not.

_____
GREGORIA PONCE

SUBSCRIBED AND SWORN TO before me this 2nd day of September, 2011.

_____
Notary Public in and for the
State of T E X A S

AMY F. MARIN
Notary Public
STATE OF TEXAS
My Commission
Expires 11/26/2012

6