FILED
OCT 2 6 2012
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

GENOVEVA MORALES, *et al.*,
    Plaintiffs

v.                                              DR-70-CA-14

E.P. SHANNON, *et al.*,
    Defendants

## CONSENT ORDER AND SETTLEMENT AGREEMENT

### Background

In August 1970, Plaintiffs Genoveva Morales, *et al.*, filed their class action complaint challenging the provision by Defendant Uvalde Consolidated Independent School District and its officials (collectively, "Uvalde C.I.S.D." or "the District") of educational opportunities to Mexican-American schoolchildren[1] under the Fourteenth Amendment to the U.S. Constitution, Section 1981 and Title VI of the Civil Rights Act of 1964. A trial was held in 1972 and in 1973, the Court issued its Memorandum Opinion and found no evidence of segregative intent against Latino schoolchildren and denied Plaintiffs relief on each of their claims.[2]

In 1975, the Fifth Circuit reversed, in part, the Court's 1973 decision, finding evidence of segregative intent in Uvalde's public school system against Mexican-American schoolchildren. *Morales v. Shannon*, 516 F.2d 411, 413 (5th Cir. 1975). The Fifth Circuit found that the neighborhood assignment system, coupled with the District's "freedom of choice" plan,[3] perpetuated the intentional segregation of Latino students originally caused by the establishment

---

[1] As in the District Court's original memorandum opinion, the term "Mexican-American" references persons with Spanish surnames. *See Morales v. Shannon*, 366 F. Supp. 813, 816 n.13 (W.D. Tex. 1973) *rev'd in part*, 516 F.2d 411 (1975) *cert. denied*, 423 U.S. 1034 (1976). In this Consent Order, the Parties substitute the term "Latino" for "Mexican-American."

[2] Prior to the District Court's issuance of its opinion in 1973, the Uvalde C.I.S.D. had consolidated with the Batesville I.S.D.

[3] As the Court pointed out, the freedom of choice plan resulted in 154 Anglo students selecting the predominantly Anglo school, Dalton Elementary. *Id.*

of Mexican schools. *Id.* The Fifth Circuit remanded to the District Court other issues concerning faculty, administrators and bilingual-bicultural programs.[4]

On June 28, 1976, this Court entered a final decree, adopting the District's proposed desegregation and bilingual-bicultural plans. *See* Decree, Dkt. No. 59. The Decree addressed many areas of the District's operations, including: student assignments; principals, faculty, staff and aide assignments, hiring, and reductions; bilingual-bicultural programs; classroom assignments; transportation; facilities; and annual reporting requirements. The Court directed the District to implement the desegregation plan and the bilingual-bicultural program to assist in carrying out the mandates under the Decree. As the Court professed, the implementation of the desegregation plan and the bilingual-bicultural education program "will suffice to convert the School District to a unitary school district." *Id.*

In 1995, the District filed its first Motion for Modification of the Decree, seeking Court approval to modify the student assignment plan in the elementary schools. Plaintiffs and the District (herein, "the Parties") agreed to incorporate the grade arrangement plan into the desegregation plan and also agreed to include additional reporting requirements for the District. The Court granted that motion and modified the plan accordingly. *See* Order dated May 5, 1995, Dkt. No. 103.

In 2002, the District filed its Second Motion for Modification of the Decree. In the motion, the District requested the implementation of its School District of Choice Program. The intent of the Choice Program was to allow students from outside the District to attend Uvalde schools, as well as to allow students from Uvalde to attend the Batesville School and students from Batesville to attend the District's schools in Uvalde. The Court granted the motion by way

---

[4] The term "English Language Learner" or "ELL" student connotes the same meaning as "limited-English proficient" or "LEP" student under TEX. EDUC. CODE §29.052. The terms are used interchangeably in this Consent Order.

of an Interim Order of Modification, amending the desegregation plan a second time. *See* Order dated July 30, 2002, Dkt. No. 104.

On June 22, 2007, Defendants filed their Motion to Dismiss or, Alternatively, Modification of Decree. The Court bifurcated the proceedings, first hearing the District's Motion for Modification of the 1976 Decree in which the District sought court approval to close grades 7 and 8 at the Batesville School and to transfer those students to Uvalde Junior High School. Plaintiffs filed their Response in Opposition to the District's Motion for Modification on July 6, 2007, objecting to the closure. Following a two-day evidentiary hearing, the Court granted the District's Motion for Modification. *See* Order dated August 9, 2007, Dkt. No. 134.

On July 20, 2007, Plaintiffs filed their Response in Opposition to Defendants' Motion to Dismiss. Thereafter, the Parties engaged in extensive discovery. On August 15, 2008, the Parties engaged in good faith negotiations through mediation.

In lieu of litigating the issues further, the Parties voluntarily agreed to enter into a Consent Order and Settlement Agreement ("2008 Consent Order"), which was signed and entered by the Court on September 15, 2008.

On August 15, 2011, Plaintiffs filed their Motion to Enforce Consent Order and for Further Relief. On September 2, 2012, Defendants filed their response. Thereafter, the parties voluntarily entered into negotiations to resolve outstanding issues.

In lieu of litigating the issues further, the Parties knowingly and voluntarily agreed to enter into a Consent Order and Settlement Agreement ("Consent Order"), as indicated by their counsels' signatures below and subject to the Court's approval. The Parties concede this Court has jurisdiction over all matters referenced in the Consent Order. The Parties further agree that this Consent Order shall modify and replace the 2008 Consent Order.

After reviewing the terms of this Consent Order and Settlement Agreement, the Court finds that the provisions of this Consent Order are fair, just, and reasonable. The Court concludes that it has jurisdiction over all matters and its entry is consistent with the Fourteenth Amendment to the United States Constitution, Title VI of the Civil Rights Act of 1964 and the Equal Educational Opportunities Act of 1974, and that it shall further the orderly desegregation of the District and assist students with overcoming their language barriers.

It is therefore ORDERED, ADJUDGED and DECREED that the Uvalde C.I.S.D., by and through its school board members, agents, officers, employees, successors, and all those in active concert or participation with them, are hereby directed to fully implement the provisions of the Consent Order herein. The District is ORDERED to inform and disclose the relevant provisions of this Consent Order within 30 days that this Order is signed and entered by the Court to each employee of the District who performs any work related to the responsibilities and duties of the District under this Consent Order.

## I.  DEFINITIONS

A.  "Reasonable Efforts" means implementing a plan reasonably designed to comply with all the specific objectives to which the reasonable efforts are directed.

B.  "Best Practices" means establishing an educational framework and design that incorporates effective educational practices based on sound educational research exhibiting proven, successful results in the area to which the best practices are directed.

## II. FACULTY AND PRINCIPALS

A. The District shall continue to assign faculty and principals who work directly with students at a school so that in no case shall the racial composition of a staff indicate that a school is intended for black students, Latino students or white students.

B. The District shall ensure that the assignment ratio of Latino to Anglo teachers in each school, with the exception of the Batesville school and the high school, is the same (within 15%) as the ratio of Latino to Anglo teachers throughout the entire school system. The assignment ratio of Latino to Anglo teachers in the Batesville school and the high school shall be the same (within 25%) as the ratio of Latino to Anglo teachers throughout the entire school system.

C. The District shall continue to make all reasonable efforts to recruit, hire and retain the best qualified candidates as teachers and principals for Uvalde High School and make all reasonable efforts to increase the number of Latino teachers and principals at Uvalde High School.

## III. ENGLISH LANGUAGE LEARNER ("ELL") PROGRAM

A. The District shall at all times implement and maintain appropriate language services for all ELL students of the District, consistent with state and federal laws.

B. In developing, implementing, evaluating, monitoring and enforcing its language programs for ELL students, the District shall include, but not limit its ELL programs to, the provisions included in "Exhibit A." The District shall further not develop and engage in any practices related to its ELL programs that are inconsistent with the provisions in "Exhibit A." Inclusive with the provisions in Exhibit A, the District shall continue seek advice on and implement best practices related to ELL programs.

C. The District shall continue to communicate the benefits and features of the ELL programs in English or Spanish, whichever is the language of the parents or guardians, to all parents of prospective ELL students, including those parents and guardians who have indicated a desire to have ELL-identified students not participate in the ELL program.

## VIII. GIFTED AND TALENTED PROGRAM

A. The District shall not discriminate on the basis of race, color or national origin in the delivery of its Gifted and Talented ("GT) program.

B. The District shall maintain the District's expanded definition of "Giftedness" and the program's accompanying expanded criteria for testing that goes beyond testing academic abilities as identified in the District's 2007-08 Gifted and Talented Handbook.

C. The District shall communicate the benefits, features and qualifications of the GT program to all parents and guardians of students first entering the District's schools in English or Spanish, whichever is the language of the parents or guardians.

D. The District shall make all reasonable efforts to increase the number of Latino students identified in the District as gifted and talented in each school year beginning in 2012-13 and continuing thereafter until further order of this Court.

## IX. EXTRACURRICULAR AND COCURRICULAR ACTIVITIES

A. The District shall not discriminate on the basis of race, color or national origin in the delivery of its extracurricular and co-curricular programs and services.

B. Prior to May 1, 2013 and the first day of May for each year thereafter until further order of this Court, the District shall communicate the benefits, features and qualifications of the National Junior Honor Society and National Honor Society, both in writing and orally to the students during an assembly, and to all parents and guardians of students in writing in English or

Spanish, whichever is the language of the parents or guardians, during the school year in which their children are enrolled in the fifth or sixth grade.

C. The District shall make all reasonable efforts to increase the number of Latino students participating in the District's Junior National Honor Society and National Honor Society in each school year beginning in 2012-13 and continuing thereafter until further order of this Court.

D. Consistent with the District's past decision, for the upcoming 2012-13 school year and until further order of this Court, the District shall no longer charge a fee to join student councils.

## X. CLASSROOM ASSIGNMENTS

A. The District shall not discriminate on the basis of race, color or national origin in the classroom assignment of students.

B. Prior to May 1, 2013 and the first day of May for each year thereafter until further order of this Court, the District shall communicate the benefits and features of the pre-advanced placement and advanced placement coursework, both in writing and orally to the students during an assembly, and to all parents and guardians of students in writing in English or Spanish, whichever is the language of the parents or guardians, during the school year in which their children are enrolled in their fifth or sixth grade years.

C. Prior to May 1, 2013 and the first day of May for each year thereafter until further order of this Court, the District shall communicate the benefits and features of the pre-advanced placement and advanced placement coursework, both in writing and orally to the students during an assembly, and in writing in English or Spanish, whichever is the language of the parents or

guardians, to all parents and guardians of students during the school year in which their children are enrolled in the eighth grade.

D. The District shall make all reasonable efforts to increase the number of Latino students enrolled in pre-advanced placement and advanced placement coursework in each school year beginning in 2012-13 and continuing thereafter until further order of this Court.

E. For each student enrolled in a pre-advanced placement or advanced placement course who is struggling to pass or is failing the course, the District shall provide tutoring free of charge to the student as a matter of first recourse.

F. Prior to May 1, 2013 and the first day of May for each year thereafter until further order of this Court, the District shall communicate the benefits, features and qualifications for students who qualify to be included in the "Top Ten" graduates and the benefits, features and qualifications for students who qualify to be included in the "Top Ten Percent" of the graduates of the District, both in writing and orally to the students during an assembly, and to all parents and guardians of students in writing in English or Spanish, whichever is the language of the parents or guardians, during the school year in which their children are enrolled in the eighth grade.

G. Prior to May 1, 2013 and the first school day of May for each year thereafter until further order of this Court, the District shall communicate in writing to all parents and guardians of students in English or Spanish, whichever is the language of the parents or guardians, the varying grade point averages, or weights, for each grade in all courses offered by the District in its high schools.

H. Prior to May 1, 2013 and the first school day of May for each year thereafter until further order of this Court, the District shall communicate in writing to all parents and guardians

of students in English or Spanish, whichever is the language of the parents or guardians, the open enrollment policy for each course offered by the District in its high schools, including but not limited to the Independent Studies courses.

I.  For each economically disadvantaged student desiring to enroll in pre-advanced placement or advanced placement courses that require summer reading, the District shall provide to that student free of charge a copy of each item required to be read. The District shall provide the summer reading item to migrant students no later than April 1 of the year prior to the school year for which the student will take the course. The District shall provide the summer reading item to other economically disadvantaged, non-migrant students no later than June 1 of the year prior to the school year for which the student will take the course. The District shall further ensure that migrant students will be provided the opportunity to take any required assessment or test on the summer reading assignment when the migrant students return in the fall.

## XI. PARENTAL INVOLVEMENT AND CULTURAL COMPETENCY TRAINING

A.  The District shall continue to make all reasonable efforts to carry out the recommendations of the parental involvement program evaluation that the school board determines to be the best practices and shall include best practices related to effectiveness of parental involvement for all parents including Latino parents, for the upcoming 2012-13 school year and each school year thereafter until further order of this Court.

B.  The District shall continue to provide cultural proficiency training by an organization or consulting firm with experience and expertise in conducting cultural proficiency training to its educational leadership who did not previously receive the training under the prior consent order, including at a minimum: the District's Board of Trustees, the Superintendent, the District's Administration, principals and vice-principals.

D. The cultural proficiency training shall be a minimum of six hours and shall be completed no later than February 1, 2013.

## XII. QUALITY OF EDUCATION

A. For the 2012-13 school year and each school year thereafter until further order of this Court, the District shall make all reasonable efforts to increase the percentage of Latino students passing the Texas Assessment of Knowledge and Skills ("TAKS"), under the "All-Test" measure for each grade level, an equal measure for the State of Texas Assessments of Academic Readiness ("STAAR") including the end-of-course exams or other statewide assessment test if the TAKS/STAAR are replaced or substituted during the term of this Order.

B. For the 2012-13 school year and each school year thereafter until further order of this Court, the District shall make all reasonable efforts to increase the percentage of Latino students graduating from high school in a four-year cohort, decrease the percentage of Latino students retained in grade level, and decrease the percentage of Latino students dropping out from high school.

## XII.   GRIEVANCE PROCEDURE

A.   The District shall create and maintain a grievance procedure for any prospective or actual faculty, administrator or other support personnel complaining of possible discrimination on the basis of race and/or national origin. These procedures shall be consistent with state and federal laws.

B.   In addition, the District shall provide to MALDEF or other counsel of record for Plaintiff each complaint alleging possible discrimination on the basis of race and/or national origin within 10 days of the District's receipt of such complaint. MALDEF shall maintain the confidentiality of any such complaint and agrees not to disclose such complaint or use the evidence of such complaint other than in connection with MALDEF's representation of Plaintiffs in this lawsuit. MALDEF shall maintain the confidentiality of any such complaint in accordance with the terms and provisions of the Confidentiality Order previously entered in this case on or about the 17th day of April, 2008 relating to the confidentiality of information concerning students.

C.   In addition, the District agrees that MALDEF shall be entitled, hereafter, to serve discovery requests, no more often than bi-annually, seeking information concerning each Latino applicant denied a teaching, administrative or support position with the District, by promotion, transfer or new hire.

## XIII.   ANNUAL REPORT AND DOCUMENT REQUESTS

A.   The District shall on April 15, 2013, and annually thereafter on April 15 of each succeeding year until further order of the Court, file with the Clerk of this Court a report setting forth the following:

1.   The number and percentages of students by race, ethnicity and LEP status enrolled in the District;

11

2.  The number and percentages of student by race, ethnicity and LEP status enrolled in each school of the District;

3.  The number and percentages of students by race and ethnicity enrolled in each classroom in each school in the District;

4.  The number and percentages of full-time teachers by race and ethnicity in the District;

5.  The number and percentages of full-time teachers by race and ethnicity in each school in the District;

6.  The number and percentages of part-time teachers by race and ethnicity in the District;

7.  The number and percentages of part-time teachers by race and ethnicity in each school in the District;

8.  A brief description of any present or proposed construction or expansion of facilities, including location, grade(s) served, anticipated number of students described by race and/or ethnicity to be assigned to such school, and anticipated date of completion;

9.  The number and percentages of students by race, ethnicity and LEP status in the Gifted and Talented Program District-wide;

10. The number and percentages of students by race, ethnicity and LEP status in the Gifted and Talented Program in each school in the District;

11. The number and percentages of students by race, ethnicity and LEP status during the current school year of students applying for entry, denied entry and accepted for entry into the GT Program District-wide;

12. The number and percentages of students by race, ethnicity and LEP status during the current school year of students applying for entry, denied entry and accepted for entry into the GT Program in each school in the District;

13. The number and percentages of students by race, ethnicity and LEP status in each of the Junior National Honor Society and the National Honor Society;

14. The number of parental denials to the language service programs (e.g., bilingual education and English as a Second Language) for ELL students;

15. The number and percentages of students by race, ethnicity and LEP status identified as special education;

16. The number and percentages of students by race, ethnicity and LEP status in the Top Ten Graduates as recognized by the District (if not final, then state: not yet final);

17. The number and percentages of students by race, ethnicity and LEP status ranking in the Top Ten Percent of the junior and senior classes, respectively;

18. The number of waivers and exceptions to the Bilingual and English as a Second Language educational programs submitted by the District and the corresponding grade level and language program for which the waivers or exceptions apply;

19. The number of teachers, principals and administrators, respectively, by race and ethnicity hired by the District during the present school year;

20. The number of teachers, principals and administrators, respectively, by race and ethnicity lost by attrition or other means during the present school year; and

21. The results of Latino students in the areas identified in Sections: VIII(D)- Gifted and Talented; IX(C)- Junior National Honor Society and National Honor Society; X(D)- Pre-Advanced Placement and Advanced Placement; XII(A)- TAKS; and XII(B)- Graduation, Retention and Dropouts.

B. In addition to the annual reporting requirements, the District shall promptly respond to all reasonable document and data requests made by Plaintiffs.

## XIV. COVENANTS

The District shall continue to abide by the Covenants adopted by the Board of Trustees on or about February 1, 2008. These Covenants are attached as Exhibit B. To the extent that these covenants conflict with the terms of this Consent Order, the terms of this Consent Order control.

## XV. ATTORNEYS' FEES AND COSTS

The Parties have agreed that it is appropriate as part of the settlement underlying this Consent Decree for the District to pay to Counsel for Plaintiffs, on behalf of Plaintiffs, reasonable attorneys' fees and costs in this case in the amount of $15,000. This amount fully satisfies any obligation the District may have to pay reasonable attorneys' fees and costs for and

on behalf of Plaintiffs for any and all work performed and costs and expenses incurred through and including the date that this Consent Order is signed and entered by the Court. The District shall make payment in full in the name of Plaintiffs' counsel, the Mexican American Legal Defense and Educational Fund, and forward such payment to Plaintiffs in care of Plaintiffs' counsel at 110 Broadway, Suite 300, San Antonio, Texas 78205, no later than 30 days following the date that this Consent Order is signed and entered by the Court.

## XVI.   FINAL TERMINATION OF CASE

The District and Plaintiffs agree that this Consent Order and Settlement Agreement constitutes an agreement and enforceable order with regard to all remaining contested issues involved in this lawsuit. The Parties contemplate that, upon Court approval of this Consent Order and Settlement Agreement, this case will enter a process which will result in final termination and entry of any Order of Dismissal with Prejudice, as set out below:

A.   Until an Order of Dismissal is entered, the Court will maintain jurisdiction over this case to ensure that the District takes all actions identified in this Consent Order and refrains from taking any actions which have the effect of reversing the progress it has made in desegregating the school system. The Court shall further retain jurisdiction over the areas of student assignments, transportation, facilities, and non-faculty staff and aides for a period of three years from the date this Consent Order is signed and entered by this Court prior to final dismissal.

B.   Dismissal of Lawsuit - On or after 30 months following the date this Consent Order is signed and entered by this Court, the District may file a Motion to Dismiss this lawsuit. Plaintiffs may file any exceptions or objections they may have based upon the District's alleged non-compliance with this agreement and conduct reasonable discovery.

Unless the Court finds material non-compliance with the terms of this agreement by the District after the filing of any such objections by the Plaintiffs, this case will be considered dismissed in its entirety by Order of this Court to follow on a date no earlier than three years from the date this Consent Order is signed and entered by this Court.

So ORDERED this the ___12___ day of ___Oct___, 2012.

_____
The Honorable Orlando Garcia
United States District Court Judge

The following signatures of the parties' respective counsel indicate each party's consent to the form of this Consent Order and Settlement Agreement.

FOR THE PLAINTIFFS,
GENOVEVA MORALES, *ET AL.*,

_David Hinojosa_
David Hinojosa
State Bar No. 24010689
MALDEF
110 Broadway, Ste. 300
San Antonio, Texas 78205
(210) 224-5476
(210) 224-5382 (Fax)

FOR THE DEFENDANTS,
UVALDE C.I.S.D., *ET AL.*,

_Grant Cook_
Grant Cook
State Bar No. 04732000
The Cook Law Firm
5005 Riverway, Ste. 210
Houston, Texas 77056
(713) 552-0700
(713) 552-1610 (Fax)

16