IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GENOVEVA MORALES, *et al*., Plaintiffs | § | |
| | § | |
| v. | § | DR-70-CA-14 |
| | § | |
| E.P. SHANNON, *et al*., Defendants | § | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO QUASH NOTICES OF DEPOSITION FOR RULE 30(B)(6) WITNESS AND MARIA ELENA MARTINEZ AND MOTION FOR ENTRY OF PROTECTIVE ORDER**

Plaintiffs Genoveva Morales, *et al.*, file this response in opposition to Defendants' Motion to Quash Notices of Deposition for Rule 30(b)(6) Witness and Maria Elena Martinez and Motion for Entry of Protective Order. Defendants fail to carry their heavy burden in moving for a protective order and nothing in the Consent Order prohibits Plaintiffs from deposing Defendants in order to discover relevant facts pertinent to the grave issues at hand. In support, Plaintiffs show as follows.

**Facts**

Following Plaintiffs' Motion to Enforce Consent Order and for Further Relief filed in 2011, Plaintiffs and Defendants E.P. Shannon, *et al.*, entered into a second consent order, which was signed and entered by this Court on October 26, 2012. *See* Dkt. No. 204. As the Consent Order states, the entry of the Consent Order "is consistent with the Fourteenth Amendment to the United States Constitution, Title VI of the Civil Rights Act of 1964 and the Equal Educational Opportunities Act of 1974, and that it shall further the orderly desegregation of the District and assist students with overcoming their language barriers." *Id.* at 3.[1]

---

[1] *See id.* for a further brief explanation of the proceedings in this case. Defendants' abbreviated facts pertaining to the proceedings is not entirely accurate, including their representation that Plaintiffs' law firm, MALDEF, has been

Approximately six months later, Defendants' counsel informed Plaintiffs' counsel that Defendants were interested in naming a public school after Plaintiff Genoveva Morales, but that Defendants also wanted to explore how they could come out from under the Court's supervision. *See* Ex. 1, Ltr. From Wood to Hinojosa (May 21, 2013). Plaintiff responded thereafter by reiterating that Defendants needed to fulfill their duties and obligations under the Consent Order for the next three years.[2]

Plaintiffs' counsel followed by submitting written discovery requests to Defendants, including a request for Defendants to produce their bi-annual compliance report that was to be presented to the Board of Trustees in the spring of 2013 in a "Special Board Meeting." *See* Defs.' Mot. To Quash, Ex. B at 9; *see also* Consent Order and Settlement Agreement, Dkt. 204-1 at 21 (Number 19). This provision was intended to ensure that Defendants did not, once again, fall astray from their duties under the Consent Order by requiring Defendants to police their compliance with the order, to make the Board of Trustees aware of compliance issues, and to keep the public informed. To Plaintiffs' dismay, Defendants responded by asking Plaintiffs where such an obligation existed in the Consent Order. *See* Ex. 2, Email from C. Wood to D. Hinojosa (July 18, 2013). Defendants failed to present such a report to its Board of Trustees until the fall of 2013, reportedly on September 16, 2013.

Five months after the initial discovery requests were propounded, and over one year past the entry of the Consent Order in this case, Defendants still found themselves trying to understand the terms of the Consent Order, asking Plaintiffs questions such as:

- "Ex. A #6b—what does the reference to 'benchmarks for ELL students, including ….participation in GT..AP..[and] dual credit' mean? Is this simply a reference to a

---

counsel in this case only since 1995. (*See, e.g.,* Dkt. No. 60, identifying MALDEF attorneys on pleading filed on July 1, 1976).
[2] Based on the call, Plaintiffs' counsel was left with the impression that Defendants' counsel did not realize that the most recent consent order had only been entered about six months earlier.

specific goal of the number of ELL students enrolled in GT, AP, and dual credit? We are trying to figure out how you benchmark participation in programs.

- Ex. A #13a/b—Please clarify this section. What does it mean to use performance data in classroom observations? Did the parties intend to change the typical classroom observation forms? Or for the administrator to bring ELL students data to each classroom observation? Please clarify the intent and meaning behind this section."

Ex. 3, Email from S. Castillo to D. Hinojosa (Nov. 6, 2013).

When Defendants invited Plaintiffs to review responsive documents to the discovery requests on or about October 30, 2013, Plaintiffs were met with several empty manila folders and other folders with irrelevant and unresponsive documents. *See* Ex. 4, Decl. of Ernest Herrera, at ¶¶ 8-9. This, despite Plaintiffs' repeated attempts to explain the terms of the Consent Order to Defendants over the course of the last five months. Plaintiffs once again spent the better part of the day explaining what documents would be responsive to the requests. *See id.* at ¶ 13. Defendants' offer to Plaintiffs to search numerous filing cabinets filled with applications was quite disingenuous, because there was no time to review those files due to the significant amount of time expended on educating Defendants on their obligations and the files were not arranged to comply with Plaintiffs' narrow request for specific files. *See id.* ¶¶ 7, 11-13. Likewise, Plaintiffs had no time to walk through the schools because they did not finish their discussions with Defendants regarding the document requests until about 3:00 p.m. when most of the students would be dismissed from school. *See id.* at ¶ 16.

After reviewing the final responses, it was clear to Plaintiffs that there were serious compliance issues. However, before filing a motion to enforce and in order to discover additional relevant facts to the outstanding issues, Plaintiffs needed to depose certain witnesses because, as in most cases, documents and interrogatory answers seldom reveal all necessary, relevant facts. Accordingly, Plaintiffs initially sent two notices of deposition to Defendants on

March 3, 2013, seeking to depose a board of trustee member and Rule 30(b)(6) witnesses designated by Defendants to respond to questions in various compliance areas.

**Argument**

"Parties may obtain discovery regarding any nonprivileged mater that is relevant to any party's claim or defense. . .Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "A party may, by oral questions, depose any person, including a party, without leave of court, except as provided in Rule 30(a)(2)."[3] Fed. R. Civ. P. 30(a)(1).

Discovery may be limited if the Court determines that pursuant to its own motion or that of a party that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. 26(b)(2)(C)(i). However, the use of a protective order to prohibit a deposition altogether is very unusual. *See Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979). The burden of establishing a Rule 26 protective order rests with the movant. *See General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1987) *citing* Fed. R. Civ. P. 26(c)(1). A movant seeking to quash an entire deposition has a heavy burden of demonstrating good cause. *See Bucher v. Richardson Hosp. Authority*, 160 F.R.D. 88, 92 (N.D. Tex. 1994). Good cause must be shown through a specific need for protection. *See Landry v. Air Line Pilots Assn.*, 901 F.2d 404, 453 (5th Cir. 1990). The standard in the Fifth Circuit is "extraordinary circumstances." *Salter*, 593 F.2d at 651. The movant must show a particular and compelling need to succeed in requesting such an order, as mere conclusory assertions of injury are insufficient. *See United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978); *Resolution Trust Corp. v. Worldwide Ins. Mgmt. Corp.*, 147 F.R.D. 125, 127 (N.D. Tex. 1992).

[3] None of the exceptions under 30(a)(2) apply here, nor do Defendants even raise the argument.

**I. Defendants have failed to carry their heavy burden in seeking a protective order.**

Defendants filed their motion seeking to prohibit Plaintiffs from discovering relevant facts that will assist the Court in determining whether to enforce its Consent Order. As described above, Defendants' actions since the entry of the Consent Order in October 2012 raise serious concerns related to their lack of compliance. Although Defendants aver that the depositions are unreasonably cumulative and duplicative, that is clearly not the case and they cannot carry their heavy burden. *See Bucher*, 160 F.R.D. at 92.

Defendants' argument fails because they misconstrue the purpose of the depositions sought by Plaintiffs by averring that the depositions are intended to make up for "deficiencies" in the written discovery responses that can be clarified with further discussions with Defendants. *See* Defs.' Mot. to Quash at 8. However, that representation is inaccurate. As Plaintiffs explained in a second letter to Defendants on January 24, 2014, the possible "deficiencies" concerned deficiencies in Defendants' compliance with the provisions of the Consent Order. *See* Defs.' Mot. to Quash, Ex. L. For example, Plaintiffs explained that the Latino-Anglo teacher ratios in two of Defendants' schools (Uvalde High School and Batesville Elementary School) did not reach the ratios required under the Consent Order and the written discovery responses and documents produced did not explain how or why Defendants remained out of compliance. *See id.* Without revealing too much of their internal strategy, it can be expected that Plaintiffs would ask questions in a deposition of how and why certain teachers were chosen over other applicants after discovering the district's hiring policies and applications of teachers filling these positions. Plainly, those questions are not appropriate for written discovery and the relevant facts are not duplicative or unnecessarily burdensome.

The same logic applies to the eight other areas identified in Plaintiffs' 30(b)(6) Notice of Deposition, for which Defendants failed to object appropriately under the rules. *See supra* Section III. The information sought by Plaintiffs is relevant to discover how and why Defendants are not meeting their obligations under the Consent Order pertaining to the rights of English Language Learner children, access to gifted and talented programs, among others,[4] and these same facts cannot be found in Defendants' responses, nor are they the type of facts that can be discovered through written discovery requests. *See Jackson v. Willamette Industries, Inc.*, 992 F.2d 324 (5th Cir. 1993) (finding an abuse of discretion in denying discovery requests because such discovery was relevant). As Plaintiffs explained in their January 24, 2014 letter: "the written discovery provided thus far does indicate that there remains substantial noncompliance in the District. However, proceeding with a motion to enforce simply on numbers alone would not be a prudent thing to do for the federal district court, much less the parties." Defs.' Mot. to Quash, Ex. L.

Defendants also have not offered any grounds showing how or why the deposition notice of board member Maria Elena Martinez should be quashed and thus, have waived their argument. *See Ferko v. Natl. Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 143 (E.D. Tex. 2003) ("party filing a motion for a protective order must state why a…protective order is needed. . ."). Indeed, it would certainly be appropriate for defendant trustee members to be deposed in light of the superintendent turnover, as they too have continuing responsibility of overseeing the District's compliance with the Consent Order.

Furthermore, Rule 26, as applied to deposition testimony, is often held cumulative or unnecessarily duplicative when depositions have already occurred and do not set forth new pertinent testimony. *See e.g., Bell v. Fowler*, 99 F.3d 262, 271 (8th Cir. 1996) (allowing party

[4] *See* Defs.' Mot. to Quash, Ex. M.

additional depositions would have been cumulative); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001) (since depositions had already been taken from the requested witnesses, the party seeking to re-depose the witnesses failed to show that information sought was not cumulative or duplicative). Here, no depositions have taken place and, thus, granting the motion to quash would be inappropriate.

In sum, Plaintiffs have identified various areas of noncompliance and Plaintiffs should not be prevented from discovering relevant facts under the circumstances in this case, which do not exemplify the "extraordinary circumstances" required by the Fifth Circuit. *Salter*, 593 F.2d at 651. While some areas will be plainly proven through the written discovery (such as Defendants' failure to provide a bi-annual compliance report in the spring of 2013), other areas require additional discovery through oral depositions. Thereafter, Plaintiffs can decide which provisions of the Consent Order are appropriate to move for enforcement, and the Court, nor the parties, will be burdened with trying issues that may not need to be raised.

## II. Nothing in the Consent Order or the federal rules prohibits Plaintiffs from discovering relevant facts related to Defendants' noncompliance.

Defendants never objected to the written discovery served by Plaintiffs in June and July of 2013 on the grounds that the Consent Order did not allow such. *See, e.g.*, Defs.' Mot. to Quash, Ex. F. Neither did Defendants ever confer with Plaintiffs that they would move to quash deposition notices on those grounds. *See* Defs.' Mot. to Quash, Ex. K. In their Motion to Quash, Defendants raise for the first time their argument that the Consent Order only allows discovery at the time Defendants file a motion to dismiss the consent order. As shown below, nothing in the Consent Order bars discovery as ordinarily allowed under the federal rules of civil procedure.

**a. Defendants' reading of discovery limits under Section XIV(B) is erroneous.**

Defendants ask the Court for a strained and inaccurate interpretation of the Consent Order regarding the scope of discovery allowed. "A consent decree is akin to a contract yet also functions as an enforceable judicial order." *United States v. Chromalloy Am. Corp.*, 158 F.3d 345, 349 (5th Cir. 1998) (quotation omitted). Courts have applied general contract principles when interpreting consent decrees. *See U. S. v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236, 95 S. Ct. 926, 934 (1975) ("since consent decrees and orders have many of the attributes of ordinary contracts, they should be construed basically as contracts"). Therefore "the scope of a consent decree must be discerned within its four corners." *Lelsz By & Through Lelsz v. Kavanagh*, 824 F.2d 372, 373-374 (5th Cir. 1987) *quoting Eaton v. Courtaulds of North America, Inc.*, 578 F.2d 87, 91 (5th Cir. 1978). A consent decree should be interpreted by its plain language. *See Lelsz*, 824 F.2d at 374; *see also Certain Underwriters at Lloyd's London v. C.A. Turner Const. Co., Inc.*, 112 F.3d 184, 186 (5th Cir. 1997).

In their motion to quash, Defendants state that discovery is "permitted only in the context of the District filing a Motion to Dismiss." *See* Dkt. 213 at 3, ¶ 8. However, nothing in the four corners of the Consent Order or its plain language allows discovery "only in the context" of a motion to dismiss, nor does it include any language prohibiting discovery outside of a motion to dismiss. Section XVI(B) of the Consent Decree merely clarifies that should Defendants move for dismissal of this lawsuit, Plaintiffs will be allowed to conduct discovery. *See* Dkt. 204 at 14. This provision was added to ensure that Defendants would not attempt to obstruct the discovery process during this phase as had they done in the past. Because nothing in the Consent Order prohibits Plaintiffs from seeking discovery of facts pertinent to Defendants' noncompliance, Plaintiffs urge the Court to deny Defendants' motion.

**b. Additional discovery provisions under Sections XII and XIII of the Consent Order further evidence that discovery is proper.**

Other provisions in the Consent Order, Sections XII and XIII (ignored wholly by Defendants in their Motion to Quash), evince no intent by the parties to prohibit discovery. Section XII allows for bi-annual discovery requests with regard to the employee grievance procedure. This provision was added to avoid excessive discovery by Plaintiffs on these issues. Section XIII, which addresses "Annual Reports and Document Requests," calls for the Defendants to respond to Plaintiffs' "reasonable requests" for documents and data promptly. These provisions indicate that the parties foresaw the possibility of discovery being conducted during the term of the Consent Decree, but none of these provisions bar discovery. Indeed, it is not even conceivable how Plaintiffs in this longstanding school desegregation case would forego their right to discovery in the event compliance issues arose before the end of the order, especially given the recent history of Defendants' noncompliance.

Plaintiffs' notices are within the standard practice under the federal rules. A party may, by oral questions, depose any person, including a party, without leave of court, except in certain circumstances. Fed. R. Civ. P. 30(a). None of the exceptions under Rule(a)(2) apply here. Plaintiffs appropriately served the notices in the context of the Court's jurisdiction over this case, which lasts until an order of dismissal is entered. *See* Dkt. 204 at 14.

**III. Defendants failed to object specifically to the deposition notices.**

Defendants' motion to quash is defective, because Defendants failed to articulate to the Court the reasons why a protective order is needed for each disputed deposition topic. *See Meltzer/Austin Rest. Corp. v. Benihana Nat. Corp.*, 4-11-CV-542-LY, 2013 WL 2607589 (W.D. Tex. June 10, 2013) *citing Ferko,* 218 F.R.D. at 143 (party filing a motion for a protective order must state why a protective order is needed for *each* disputed deposition topic)(emphasis added).

In Plaintiffs' 30(b)(6) Notice of Deposition, Plaintiffs identify nine separate issues but Defendants only describe the basis (albeit in a conclusory and defective manner under the rules, *see infra* Section I) for the need for a protective order to the topic of employment hiring, retention, and recruitment. *See* Defs.' Mot. to Quash at 7-8.

The other topics identified with reasonable particularity in Plaintiffs' 30(b)(6) notice for which they require additional, necessary relevant facts, include the areas of ELL programs, gifted and talented programs, extracurricular and cocurricular activities, quality of education, grievance procedures, annual reporting requirements, and Defendant Board of Trustees' covenants attached to the Consent Order. (*See* Defs.' Mot. to Quash, Ex. M).

Because Defendants' failed to specify their objection to the eight other topics, Defendants must designate and present for deposition one or more persons to testify on behalf of the district. *See Ferko*, 218 F.R.D. at 143 (failure to include arguments regarding specific topics in motion for protective order is "tantamount to not filing a motion for a protective order on those topics"); *see also* Fed. R. Civ. P. 30(b)(6) ("the named organization *must* then designate one or more officers…") (emphasis added).

**Conclusion**

For the reasons stated above, Plaintiffs respectfully urge the Court to deny Defendants' motion to quash and for entry of a protective order and grant other relief to Plaintiffs so entitled.

DATED: March 20, 2014

Respectfully Submitted,

Mexican American Legal Defense and
Educational Fund, Inc. (MALDEF)

David G. Hinojosa /s/
David G. Hinojosa
State Bar No. 24010689
Ernest Herrera
N.M. State Bar No. 144619


 


110 Broadway, Suite 300
San Antonio, TX 78205
Tel: (210)224-5476 / Fax: (210)224-5382

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I certify that on March 20, 2014, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

D. Craig Wood
Stacy Tuer Castillo
Walsh, Anderson, Gallegos, Green & Treviño
100 N.E. Loop 410, Suite 900
San Antonio TX 78216

/s/ David G. Hinojosa
David G. Hinojosa